164 So. 786

**SOUTHERN BELL TELEPHONE & TELE-GRAPH CO., Inc., v. LOUISIANA PUB-LIC SERVICE COMMISSION.**

No. 33416.

Oct. 15, 1935.

Rehearing Denied Dec. 2, 1935.

C. C. Bird, Jr., of Baton Rouge, E. D. Smith, of Atlanta, Ga., and J. C. Henriques, of New Orleans, for appellant.

Huey P. Long and Peyton R. Sandoz, both of Baton Rouge, for appellee.

HIGGINS, Justice.

On December 7, 1934, the Louisiana Public Service Commission, on its own motion, issued a citation to the plaintiff telephone company, to show cause on December 13, 1934, why an inquiry into its rates, charges, and practices in the state of Louisiana should not be made.

In reply to the citation and rule, plaintiff filed certain exceptions and an answer. On December 13, 1934, the hearing was started, and plaintiff introduced testimony and exhibits. The case was continued for further hearing until January 24, 1935, at which time plaintiff offered additional testimony and exhibits. The matter was again continued until February 25, 1935, when the commission offered certain testimony and exhibits, and the plaintiff also produced further testimony and exhibits. The case was then closed and the matter taken under advisement by the three commissioners.

On March 2, 1935, the commission rendered its order No. 1530, wherein the plaintiff was ordered to fix its rates, charges, and tariffs, as set forth in the schedule attached to and made a part of the order, which was to become effective on that date. The order reduced the rates to be paid by the subscribers in various amounts ranging from approximately 50 cents to $1 per month for each subscriber, thereby reducing the plaintiff's income from intrastate exchange rates in the state of Louisiana approximately $600,000 per annum.

On March 8, 1935, plaintiff, acting under the provisions of the Constitution of this state, and particularly section 5 of article 6, filed this proceeding in the Nineteenth judicial district court of Louisiana in and for the parish of East Baton Rouge, the domicile of the Louisiana Public Service Commission, praying that the order be declared null, void, and of no effect for the reason that it was unreasonable, arbitrary, and confiscatory, and in violation of the Constitution of the state of Louisiana and of the Constitution of the United States, particularly the Fourteenth Amendment thereof. It further prayed for the issuance of a temporary restraining order against the enforcement of the rates fixed by the defendant commission, upon furnishing proper bond, and asked that a rule issue directing the commission to show cause on a day and hour to be fixed by the court, why an interlocutory injunction should not issue as authorized by the provisions of the Constitution of this state. On the same day, the district judge granted a temporary restraining order, enjoining the enforcement of the order of the commission upon furnishing bond in the sum of $75,000 with good and solvent surety, and he further ordered that the rule for an interlocu-

tory injunction be made returnable on March 18, 1935.

Plaintiff furnished a bond with the United States Fidelity & Guaranty Company of Maryland, as surety, containing a clause whereby the surety obligated itself to pay all such judgments as might be rendered against the plaintiff for damages and costs "in case it be decreed that the restraining order applied for was wrongfully issued."

The defendant commission, in its return to the rule to show cause why an interlocutory injunction should not be issued, pleaded that the petition did not state a right or cause of action for such relief; that the order of the commission was legal and the rates fixed therein were fair and reasonable; and "that the restraining order should be set aside and defendant granted attorney's fees in the sum of $20,000 for damages done by reason of the necessity for employing an attorney herein." The defendant also filed an answer to the merits of plaintiff's lengthy petition setting forth fully various reasons why the order of the commission should be declared valid by the court, and in reconvention asked the court for attorney's fees in the sum of $20,000 for the purpose of having the temporary restraining order rescinded and recalled.

The rule was heard before the trial judge on March 18, 1935, and the matter taken under advisement until March 21, 1935, when he rendered a decision and written opinion dissolving the temporary restraining order, refusing the application for in-terlocutory injunction, and recalling the rule nisi.

On March 21, 1935, plaintiff filed motions for a suspensive appeal and a devolutive appeal, which were granted and made returnable on March 29, 1935. On the following day, the original order of appeal was recalled and the plaintiff granted only a devolutive appeal.

On March 21, 1935, and simultaneously with the filing of the motions for the appeals, plaintiff served notice upon the trial judge and the defendant commission that it would apply to this court for writs of certiorari, mandamus, and prohibition for the purpose of having the judgment of the district court reviewed. On April 2, 1935, we refused to grant the writs on the ground that the trial court had a discretion in granting or refusing to grant temporary restraining orders and interlocutory injunctions, and that the plaintiff had failed to show that the trial judge had abused his discretion.

On April 12, 1935, the defendant commission made application to this court for a writ of certiorari, which we denied for the reason that the remedy for the dismissal of an appeal was to either apply to the district court for the recision of the order of appeal, or, if the appeal had been perfected, to file a motion in this court for the dismissal thereof.

Upon proper motion, the case was set for a special preference hearing in this court on June 6, 1935. The defendant commission promptly filed an answer to the appeal praying that the judgment of the

district court be amended so as to allow $20,000 attorney's fees for the dissolution of the restraining order, in accordance with the return of the defendant commission to the plaintiff's rule in the district court, and that in all other respects the judgment below be affirmed.

Plaintiff contends that it is entitled to an interlocutory injunction on either of the following grounds:

(1) That the overwhelming preponderance of the evidence shows that the commission abused its authority and arbitrarily reduced the rates so extremely low that they are palpably and manifestly unreasonable, unfair, and confiscatory.

(2) That, even though the court might hold on the merits that the new rates are fair and reasonable and that the plaintiff will obtain a fair return on its investment therefrom, plaintiff is entitled to an interlocutory injunction to maintain the status quo pending a determination of the case on its merits, because it will suffer irreparable injury in being unable to collect from subscribers the difference between the two rates, if the court, on the merits, decides the case in its favor, whereas, the subscribers can be adequately protected against any loss by the court requiring a sufficient bond guaranteeing the return of the difference between the two rates, should the court decide against the company on the merits.

It is conceded by both parties litigant that the case is not before us on the merits, but solely and only on appeal from the

judgment of the district court, refusing to grant the interlocutory injunction.

The first ground urged here by the plaintiff as the basis for its statement that the trial court erred in refusing to grant the interlocutory injunction necessitated our reading the very large record consisting of testimony, affidavits, and exhibits.

This issue is so interwoven with the question presented on the merits of the case that it is difficult, if not impossible, to give our views in detail with reference to the ten errors assigned by the plaintiff without committing ourselves upon the merits of the controversy to the prejudice of one or both of the parties to this proceeding. We are not required to go that far, nor is it necessary to do so. City of Louisville v. Louisville Home Tel. Co. (C.C.A.) 279 F. 949, 956; City of Owensboro v. Cumberland Co. (C.C.A.) 174 F. 739, 747 and Allen v. Omaha Co. (C.C.A.) 275 F. 1-3.

The law is clear that the burden is upon the plaintiff to show that the commission reduced the rates to such an extent that it is patent and obvious that the company will be unable to realize a fair and just return upon its investment. The plaintiff must also demonstrate that the trial judge abused his discretion in refusing the interlocutory injunction. Section 5, article 6, Constitution of Louisiana of 1921.

In interpreting this paragraph, in the case of Standard Oil Co. v. Louisiana Public Service Commission, 154 La. 557, at page 566, 97 So. 859, 862, we said:

"The first paragraph of section 5 declares that orders affecting rates, tolls, etc., shall go into effect at such time as may be fixed by the Commission, and remain in effect until set aside by the Commission, or the final judgment of a court of competent jurisdiction; provided, that *if irreparable injury is shown,* a temporary restraining order, to remain in force until a hearing on an application for injunction, *may be granted,* but that no injunction shall issue until after five days' notice to the said Commission, enjoining the enforcement of any such rate, toll, charge, etc." (Italics ours.)

In the case of Vicksburg S. & P. R. Co. v. Railroad Commission of La., 153 La. 983, 96 So. 832, 833, it is stated:

"But inasmuch as such functions are by their nature legislative in character, and courts, owing to their methods of procedure, often cannot intelligently pass upon the advisability or propriety of regulations affecting the future as well as the present, it follows that courts should act slowly in *substituting their own views and discretion for those of a body peculiarly constituted to act* intelligently in such cases, and primarily charged with doing so, and that *they ought never to interfere with such bodies except when their action is clearly arbitrary, or unreasonable to an extent which in effect makes them so."* (Italics ours.)

See, also, Empire Rice Milling Co. et al. v. Railroad Commission of Louisiana, 143 La. 1036, 78 So. 833; United Gas Public Service Co. v. Arkansas-Louisiana Pipe Line Co., 176 La. 1024, 147 So. 66; Palama v. Livaudais et al., 179 La. 201, 153 So. 691.

In the case of Railroad Commission v. Cumberland Tel. & Tel. Co., 212 U.S. 414, 423, 29 S.Ct. 357, 361, 53 L.Ed. 577 the Supreme Court of the United States said:

"The rates * * * must be regarded as prima facie fair and valid, or, in other words, the onus was upon the complainant to show that they were what it asserts, confiscatory and unreasonable."

After reading the voluminous record, the lengthy opinion of the commission, the written reasons of the district judge for refusing the interlocutory injunction, the exhaustive briefs of counsel and the authorities, it is our opinion that the plaintiff has failed to show that the commission's order is palpably erroneous, arbitrary, and confiscatory; and that the trial judge abused his discretion or acted arbitrarily in refusing to grant the interlocutory injunction.

The second or alternative reason presented by the plaintiff for the issuance of the interlocutory injunction is that it will suffer irreparable injury in not being able to collect from certain subscribers money that would be due it in the event the merits were resolved in its favor. It is further stated that the subscribers on the contrary would not suffer any loss or injury because they would be protected by a sufficient and solvent surety.

The statement that the furnishing of a bond with a solvent surety guarantees the voluntary return to the subscribers of the difference between the two rates, if the

case is ultimately decided against the plaintiff and, therefore, complete protection, is not entirely accurate.

The records of this court and other courts will show that in an appreciable number of cases and particularly during the national depression, sureties solvent at the time the bonds are furnished are insolvent at the time they are called upon to pay. The records of the courts also show that the principals and sureties on bonds do not always voluntarily pay or reimburse the parties in whose favor the bonds are executed, and force them to resort to court to compel compliance with their obligations.

Of course, if the principal and surety did not voluntarily pay the subscribers, they would be compelled to seek redress through the courts just as the company complains it will have to do in the event the subscribers fail to voluntarily pay the company, should the plaintiff win this case on the merits.

There is nothing in the record to indicate that previous experience shows that a majority of the subscribers would fail to voluntarily pay what they owe. The company would have at its command a strong coercive method to compel payment without litigation by advising the subscriber that his service would be canceled if he failed to pay within a reasonable period of time. The percentage of those who would refuse under those circumstances to pay would be small.

There is not any evidence in the record tending to show that the subscribers would

refuse to voluntarily pay, and the statement that they would not pay, and thereby compel the company to file suit, is predicated apparently upon general information and the deductions made therefrom by the plaintiff. Therefore, one may, with equal logic and reasonableness, resort to the same method and process of reasoning, and say that there are a number of subscribers who are presently unable to afford telephone service at the high or old rate, but who would be in a position to continue as subscribers at the new or lower rate. It would also seem reasonable to say that there are many members of the public, who heretofore have felt that it was beyond their means to enjoy the benefits of telephone service, but who will now conclude that they can afford this service.

In the case of City of Louisville v. Louisville Home Telephone Co. (C.C.A.) 279 F. 949, 956, 957, the court used this pertinent language:

"In the railroad cases, as well as in the gas and water cases, the challenged law had reduced the existing rate. *This would inevitably tend to increase the number of customers and to diminish the applicable overhead.* There was plausible insistence that the net result would be, or might be, a gain and not a loss. * * * The city did not deny that the company was entitled to an increase in rates. The temporary ordinance, which was rejected by the company as insufficient, and which is now under attack, increased the rates between 20 per cent. and 25 per cent. above the old ordinance. *It is not to be doubted that the tendency of this increase, considered alone,*

*would be to lessen the number of customers, and thereby diminish the gross receipts and increase the distributed overhead.* The main reason for requiring a trial period thus seems to be absent." (Italics ours.)

If an interlocutory injunction were to issue at this time and maintain the status quo, which means that the old rates would be effective, this class of patrons and prospective patrons would be deprived of the service of this public utility for a substantial length of time when they were entitled as a matter of right to telephone service, provided the plaintiff loses the case on its merits.

Being deprived of the use of a telephone for an appreciable length of time is serious inconvenience and actual hardship, and might well cause substantial loss, injury, and damage to the subscribers or prospective subscribers, and especially those who utilize this service in business pursuits. This kind of irreparable injury is just as real and definite as the plaintiff's alleged irreparable injury of being compelled to sue patrons who are unwilling to pay.

To issue an interlocutory injunction after we have concluded that the plaintiff has failed to show that the order of the commission is palpably erroneous and confiscatory would be in effect destroying the presumption of the correctness of the commission's judgment which, according to constitutional mandate, "shall remain in effect and be complied with, unless and until set aside by the Commission, or by a final judgment of a court of competent jurisdiction, in a suit setting aside and annulling

the same." Paragraph 1, § 5, art. 6, Constitution of La. of 1921.

If we were to issue an interlocutory injunction to maintain the status quo just because on the merits it might be finally determined that the company's position is right, although we initially conclude that it has not made a satisfactory showing to justify the issuance of the interlocutory injunction, we would, in effect, be setting at naught the authorities which hold that this court will not compel a district judge to issue an interlocutory injunction unless it appears that he has arbitrarily refused to do so.

In the equity courts of the common-law states, there is a well-recognized doctrine known as the balancing of inconveniences, under which equity courts, within their sound discretion, weigh and consider in injunction matters not only the plaintiff's bare legal rights, but also the damages, injuries, and inconveniences or disadvantages which will result to the defendant from the enforcement of such alleged rights, as well as the delay in bringing and concluding the suit. Lewis and Spelling. The Law of Injunctions (1926 Ed.) p. 110, and cases therein cited.

In the case of City of Louisville v. Louisville Home Telephone Co., supra, 279 F. 949, at page 956, the court said:

"It is equally well understood that the trial court will balance the conflicting equities of the parties, and, if it appears reasonably probable that plaintiff may prevail upon the final hearing, will for the

time being preserve plaintiff's supposed right against destruction, if that temporary maintenance can be accomplished without danger of greater harm to defendant than there will be of benefit to plaintiffs. We see no sufficient reasons why these principles should not be applied to such a case as this; but we proceed to notice the reasons which are alleged to the contrary."

In the instant case we may resort to equity, particularly in view of the fact that the plaintiff is seeking equitable relief. We, therefore, may be guided by the decisions of equity courts elsewhere in determining the natural law and reason which should be applied to the case. Le Blanc v. City of New Orleans, 138 La. 243, 70 So. 212. And so we are of the opinion that the equitable doctrine of balancing inconveniences may be properly resorted to and fittingly applied to the case at bar. In doing so, we conclude, for the reasons already stated, that the plaintiff's second contention is not well founded.

■ The issue as to whether or not any damages for attorney's fees should be allowed was never tried or considered in the lower court. The plaintiff was not given an opportunity to offer any testimony as to what would be a reasonable attorney's fee, if any might be held to be due, and to raise such other legal defenses as plaintiff might have elected to make. Apparently, on account of the other serious and involved questions, it has been the practice here to remand the matter to the trial court without passing upon it, and this is particularly true when the case is here only on inci-

dental issues and pending in the district court on the merits. Therefore, we shall refrain from expressing our views with reference to this point, and leave it to be raised in the district court in a proper proceeding, without prejudice to either party's rights.

For the reasons assigned, the judgment appealed from is affirmed, reserving to the defendant the right to claim attorney's fees for dissolving the restraining order in a proper proceeding and remanding the case to the lower court for the purpose of determining that issue; plaintiff to pay the costs of this court and all other costs to await final disposition of the case on the merits.

O'NIELL, C. J., concurs in the decree, with the understanding, that the court expresses no opinion on the right to attorney's fees.

ROGERS, J., concurs in the affirmance of the judgment appealed from, but dissents from the ruling as to attorney's fees; being of the opinion that defendant's claim for attorney's fees should be rejected entirely.

ROGERS, Justice (concurring in part and dissenting in part).

I concur in the affirmance of the judgment appealed from, because the plaintiff, Southern Bell Telephone & Telegraph Company, Inc., has not shown to my satisfaction that the trial judge, with the cru-

cial facts obtained contradictorily with the parties before him, abused his discretion or acted arbitrarily in refusing to grant the preliminary injunction, or that the issuance of the writ itself will cause plaintiff irreparable injury.

But I dissent from the ruling on the question of attorney's fees and the remanding of the case for the purpose of determining that question.

Act No. 29 of 1924 regulates the procedure and practice and the power of the courts in respect to temporary restraining orders and preliminary writs of injunction. Section 2 of the statute, after providing for the discretionary right of the court to issue temporary restraining orders, further provides for the method of obtaining the dissolution of such orders. The statutory provision reads as follows, viz.:

"Upon two days' notice to the party obtaining such temporary restraining order, the opposite party, or any other party in interest, may, at any time, appear and move for the dissolution or the modification of such order, and in that event the court shall proceed to hear and determine the motion as expeditiously as the ends of justice may require. The court may, at any time, upon application of either party, or of any other party in interest, or upon its own motion, after like notice to either or both of the parties, or any other party in interest, as the circumstances may require, and after hearing, dissolve or modify any restraining order or preliminary writ of injunction theretofore issued by it."

In Albert Pick & Co. v. Stringer, 171 La. 131, 129 So. 731, and Vidal v. Sterlington Gas Corporation, 182 La. 19, 161 So. 6, we held that restraining orders granted under the provisions of Act No. 29 of 1924 have the same temporary force and effect as had preliminary injunctions issued under the provisions of the Code of Practice before the adoption of the statute, and that where such orders are wrongfully issued and are dissolved on a motion separately filed, tried, and disposed of prior to the trial of the rule nisi, attorney's fees will be allowed for obtaining their dissolution.

While under the superseded codal articles it was the settled rule that reasonable attorneys' fees might be allowed as damages for obtaining the dissolution of a preliminary injunction, it was also the settled rule that they could not be allowed where the dissolution of the writ resulted merely from the defense and trial of the case on the merits, and no effort to obtain such dissolution otherwise was shown to have been made. Albert Hanson Lumber Co. v. Mestayer, 130 La. 688, 58 So. 511, and cases therein cited. See, also, Three Rivers Oil Co. v. Laurence, 153 La. 224, 95 So. 652; In re Morgan & Co. 155 La. 915, 99 So. 696; Evasovich v. Cognevich, 159 La. 1035, 106 So. 556.

The reason why the court consistently refused to allow the recovery of attorneys' fees where the writ was dissolved only after passing on the merits was because it was not possible to separate the value of the services rendered in dissolving the writ from the value of the same services ren-

dered in defending the suit. Hunt **v.** Hill, 138 La. 583, 70 So. 522.

The defendant in this suit did not, as did the defendants in the Albert Pick & Co. and Vidal Cases, avail itself of the right granted by Act No. 29 of 1924 to move for the dissolution of the restraining order in advance of the trial on the merits of the rule for a preliminary injunction. Defendant's demand for setting aside the restraining order and for attorney's fees for its wrongful issuance was set up only in its return to the rule nisi; and it was only in the judgment on the merits of the rule nisi refusing the preliminary injunction that the temporary restraining order was dissolved.

Since defendant's demand for the dissolution of the restraining order was submitted along with the rule for a preliminary injunction and the restraining order was dissolved only after a trial on the merits of the rule nisi, it follows that defendant cannot be allowed attorney's fees for the dissolution of the restraining order, for to do so would be to allow the fees for virtually defending the suit on the merits of the rule for a preliminary injunction, which is not permissible.

In my opinion, it is a wholly useless proceeding to remand the case for the purpose of trying out the issue of whether defendant is entitled to the recovery of attorney's fees for the dissolution of the restraining order, where such issue, because it was not timely nor properly presented, has been forever foreclosed by the judgment appealed and affirmed herein.