94 So.2d 431

SOUTHERN BELL TELEPHONE & TELE-
GRAPH CO.

v.

LOUISIANA PUBLIC SERVICE COMMIS-
SION (City of New Orleans,
Intervenor).

No. 43251.

Feb. 25, 1957.

Rehearing Denied April 1, 1957.

Charles Cecil Bird, Jr., Breazeale, Sachse & Wilson, Baton Rouge, Henriques & Mayo, New Orleans, Tucker, Bronson & Martin, Shreveport, Gravel, Humphries, Sheffield & Mansour, Alexandria, Plauche & Plauche, Lake Charles, for plaintiff-appellant.

Jack P. F. Gremillion, Atty. Gen., Theo. F. Cangelosi, Baton Rouge, Raoul Sere, Louis F. Claiborne, New Orleans, Melvin G. Dakin, Baton Rouge, for appellants.

Adair & Goldthwaite, Atlanta, Ga., Donald Martin, New Orleans, Cashio, Cashio & Molloy, Maringouin, amicus curiae.

HAMLIN, Justice ad hoc.

Southern Bell Telephone & Telegraph Company instituted this suit, praying that Order No. 6993 of the Louisiana Public Service Commission, issued June 30, 1956, which reduced its rates, be decreed null,

void, and of no effect; and, that it be permitted and empowered to immediately increase its Louisiana intrastate tolls, rates and charges. In the alternative, plaintiff asked that the Order be declared null, and that it be empowered to immediately increase its November, 1952 rates prescribed by the Commission in Order No. 6131— 2.7%, the increase required to provide the Telephone Company with 6% on gross plant less 5⅓% of depreciation.

Plaintiff prayed that a rule issue to the Louisiana Public Service Commission to show cause why an interlocutory injunction should not issue, enjoining the Commission from enforcing its Order No. 6993 of June 30, 1956; from bringing suit to prohibit the Telephone Company from charging the rates fixed by Order No. 6131 of November 1, 1952; from fixing, levying, or imposing any fine or penalty for not obeying the Order of June 30, 1956; and, from authorizing any person to bring suit for the recovery of penalties for failure of the Telephone Company to comply with Order No. 6993 of June 30, 1956.

The Louisiana Public Service Commission filed an exception of no cause or right of action.

The City of New Orleans intervened, alleging that it had an interest in maintaining Order No. 6993 of June 30, 1956.

The trial judge granted the interlocutory injunction, predicated upon the Telephone

Company's furnishing adequate bond. His opinion stated, in substance, that he seriously doubted the validity of the Order.

The exceptions were referred to the merits, and upon trial, Order No. 6993 of the Louisiana Public Service Commission, ordering a reduction in intrastate toll and coin rates, was declared null. The Telephone Company was refused an increase in rates. The judgment also prohibited the Commission from bringing suit to prevent the Telephone Company from collecting, for its Louisiana intrastate services, the rates and charges fixed by Order No. 6131 of November 1, 1952; from fixing, levying or imposing any fine or penalty for disobedience to Order No. 6993 of June 30, 1956; and from instituting or authorizing or directing any persons to prosecute any action against Southern Bell Telephone & Telegraph Co. for recovery of any penalties for failure to comply with Order No. 6993 of June 30, 1956.

The defendant and intervenor appealed to this Court, praying that the judgment of the District Court be reversed, insofar as it annulled and set aside the Commission's Order; and that it be affirmed, insofar as it denied the Telephone Company's application for an increase in rates.

Answering the appeal plaintiff prayed that the judgment be affirmed, insofar as it nullified the Commission's Order; but, that judgment be rendered authorizing and empowering the Telephone Company to

increase its Louisiana intrastate tolls, rates and charges 8.4%—that is, sufficiently to produce an annual increase in gross revenue of at least $6,581,000. Alternatively, plaintiff prayed that it be authorized and empowered to increase its November, 1952 intrastate toll rates and charges 2.7%— the increase required to provide the Telephone Company with 6% on gross plant less 5⅓% of depreciation reserve.

Order No. 6993 resulted from preceedings instituted by the Louisiana Public Service Commission requiring Southern Bell Telephone & Telegraph Co. to show cause why its rates and charges for Louisiana intrastate telephone service should not be reduced. Public hearings were commenced on December 13, 1955 and concluded on May 11, 1956. The Telephone Company's motion to reopen was refused.

Order No. 6993 reads:

"1. That Southern Bell Telephone and Telegraph Company shall reduce its annual gross intrastate operating revenues in the amount of $3,940,000.00.

"2. This reduction shall be accomplished in the following manner:

"Effective September 1, 1956, all public telephone pay station rates shall be reduced from ten cents (10¢) to five cents (5¢) per local call.

"Effective August 1, 1956, all intrastate toll rates and charges shall be subject to a discount of 20% per call.

"3. This Commission retains jurisdiction in these proceedings to consider and act upon any revision of the amount of the reduction in intrastate toll rates and charges herein ordered, which Southern Bell Telephone and Telegraph Company can prove by competent evidence, based on adequate actual experience, would result in a total reduction in its annual intrastate gross operating revenues (the public telephone pay station reduction being also considered) of more than $3,940,000.00.

"4. The discount method of effecting the reduction in intrastate toll rates and charges shall be utilized until such time as Southern Bell Telephone and Telegraph Company submits revised rate schedules otherwise accomplishing the reduction in such toll rates and charges and such revised rate schedules are approved by this Commission.

"5. Any petition, motion, or objection made in these proceedings which has not otherwise been resolved by this opinion and Order is hereby dismissed."

Plaintiff alleges in its petition that the Order contains twenty-five errors on the part of the Commission, among which are the following:

1. The ordering of a schedule of rates which are so low that the return therefrom to the company is unreason-

able, arbitrary, discriminatory and confiscatory, thereby depriving the company of its property without due process;

2. The refusing to fix reasonable and just rates for the company which, would produce earnings commensurate with earnings of other utilities in Louisiana, taking into consideration the risks involved; and in holding that the telephone industry enjoys greater stability than other companies.

3. The basing of its determination of a fair rate of return on an assumed and fictitious capital structure of 45% debt ratio and 55% common stock equity, notwithstanding the company's historical average capital structure of ⅓ debt ratio and ⅔ common stock equity.

The Commission steadfastly contends that the Telephone Company has failed to overcome the presumption in favor of the validity of the order under attack, and that, therefore, it must be maintained.

Article VI, Section 4, of the Louisiana Constitution of 1921, LSA, reads as follows:

"The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, * * * telephone, telegraph, * * * and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided."

In the case of Southern Bell Telephone & Telegraph Co., Inc., v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786, 788, this Court stated:

"The law is clear that the burden is upon the plaintiff to show that the commission reduced the rates to such an extent that it is patent and obvious that the company will be unable to realize a fair and just return upon its investment. The plaintiff must also demonstrate that the trial judge abused his discretion in refusing the interlocutory injunction. Section 5, article 6, Constitution of Louisiana of 1921.

\*      \*      \*      \*      \*      \*

"In the case of Vicksburg, S. & P. R. Co. v. Railroad Commission of La., 153 La. 983, 96 So. 832, 833, it is stated:

" 'But inasmuch as such functions are by their nature legislative in character, and courts, owing to their methods of procedure, often cannot intelligently pass upon the advisability or propriety of regulations affecting the future as well as the present, it follows that courts should act slowly in substituting their own views and discretion for those of a body peculiarly

constituted to act intelligently in such cases, and primarily charged with doing so, and that they ought never to interfere with such bodies except when their action is clearly arbitrary, or unreasonable to an extent which in effect makes them so.' "

In the case of Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250, 252, this Court stated:

"* * * And, to hold that a rate is unjust or unreasonable, it must be found that the action of the Commission was arbitrary or capricious—that is, that the decision was either plainly contrary to the facts or unsupported by evidence, bearing in mind, of course, that the rulings of the Commission, like those of other administrative bodies acting under a delegation of discretionary authority, are entitled to great weight and will not be disturbed in the absence of a clear showing of abuse of power. Burke v. Louisiana Public Service Commission, 215 La. 451, 40 So.2d 916 and cases there cited."

On Page 7 of its Order, the Commission sets out that although it is authorized to fix "reasonable and just" rates, there is no prescribed formula for the precise implementation of such authorization, and that it is obliged to explore the authorities for proper guidance; and that the method or technique which may be employed to

accomplish this purpose is of less importance than the end result reached. It cites the following authority:

Federal Power Commission v. Hope Natural Gas Company, 320 U.S. 591, 64 S.Ct. 281, 288, 88 L.Ed. 333, 345, 346:

"The rate-making process under the Act, i. e., the fixing of 'just and reasonable' rates, involves a balancing of the investor and the consumer interests.

"* * * Under the statutory standard of 'just and reasonable,' it is the result reached, not the method employed, which is controlling. Cf. Los Angeles Gas & E. Corp. v. Railroad Commission, 289 U.S. 287, 304, 305, 314, 53 S.Ct. 637, 643, 644, 647, 77 L. Ed. 1180 [1191, 1192, 1197]; West Ohio Gas Co. v. Public Utilities Commission, 294 U.S. 63, 70, 55 S.Ct. 316, 320, 79 L.Ed. 761 [768]; West v. Chesapeake & P. Teleph. Co., 295 U.S. 662, 692, 693, 55 S.Ct. 894, 906, 907, 79 L. Ed. 1640 [1657, 1658] (dissenting opinion). It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. * * * And he who would upset the

rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. Cf. Railroad Commission [of Louisiana] v. Cumberland Teleph. & Teleg. Co., 212 U.S. 414, 29 S.Ct. 357, 53 L.Ed. 577; Lindheimer v. Illinois Bell Tel. Co., supra, 292 U.S. [151] at pages 164, 169, 54 S.Ct. [658] at pages 663, 665, 78 L.Ed. 1182 [1191, 1193]; Railroad Commission [of California] v. Pacific Gas & E. Co., 302 U.S. 388, 401, 58 S.Ct. 334, 341, 82 L.Ed. 319 [326].

\* \* \* \* \* \*

" \* \* \* Rates which enable the company to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for the risks assumed certainly cannot be condemned as invalid, even though they might produce only a meager return on the so-called 'fair value' rate base. \* \* \* "

The Commission found that plaintiff is a corporation organized under the laws of the State of New York, duly authorized to do business in the State of Louisiana; that American Telephone & Telegraph Co. owns all of plaintiff's outstanding common stock, all or a majority of the voting stock in eighteen other telephone operating companies, and a minority stock interest in two operating companies—all of which comprise the Bell System in the United States.

American Telephone & Telegraph Co. also owns a minority interest in The Bell Telephone Co. of Canada, a 50% interest in the Cuban American Telephone & Telegraph Co., 99.82% of the outstanding common stock of Western Electric Company, Inc., and 50% of the stock of Bell Telephone Laboratories, Inc. Western Electric Co. owns the other 50% of the stock of Bell Telephone Laboratories, Inc., and it manufactures, purchases, and distributes most of the apparatus, equipment and supplies required by all of the companies in the Bell System, while Bell Telephone Laboratories, Inc., performs research, development, and design work for the entire system.

The evidence shows that under its integrated set up, plaintiff borrows constantly from American Telephone & Telegraph Co., using a system of short term loans.

We quote the following from Page 203 of plaintiff's brief:

" \* \* \* While the amount of the reduction was not serious to the system as a whole—amounting to only a few cents per share on AT&T stock after tax savings—nevertheless it was a blow to the system because of the possibility that some of the fallacious reasoning of the commission and its experts might

influence other regulatory bodies to take similar viewpoints, without checking the accuracy of the arguments advanced."

■ The contention that the action of the Commission is fallacious is fully answered by the holding in the Hope Natural Gas Company case, supra, wherein it was held that, under the statutory standard of "just and reasonable" it is the result reached, not the method employed, which is controlling.

■ With regard to the application of the "Cost of Capital" method, the Supreme Court of the United States has recognized that the peculiar situation of each utility, which is largely reflected in its cost of capital, dictates the level of its earnings. There is no constitutional requirement that every regulated company be allowed the same rate of return.

"The company contends that the rate of return is too low and confiscatory. What annual rate will constitute just compensation depends upon many circumstances, and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts. * * *" Bluefield Water Works and Improvement Company v. Public Service Commission of State of West Virginia, 262 U.S. 679, 43 S.Ct. 675, 679, 67 L.Ed. 1176, 1182.

■ Each company is allowed to meet its own legitimate cost of doing business, although the rate of return may vary. The relevant facts and circumstances are to be considered in order that each is given an equal footing in the competition for new capital. The voluminous record in this case shows that the Commission considered the relevant facts and circumstances.

At the time of the hearing, the Commission found that the Telephone Company had a capital structure of 22.3% debt ratio and 74.6% common stock equity. The Commission based its determination of a fair rate of return on a capital structure of a 45% debt ratio and 55% common stock equity. Plaintiff contends that its historical average capital structure has been 1/3 debt ratio and 2/3 common stock equity. The testimony of Mr. W. H. Bailey, a witness for the Telephone Company, as to the meaning of debt ratio, is as follows:

"Debt ratio means the per cent of total capital represented by debt. Thus, a 30% debt ratio would signify that for every $100 of total capital $30 would represent debt and the remaining $70 would represent equity or stockholders' capital in the business. In other words, out of each $100 of total capital the owners not only have an investment of $70, but also use in

the business and guarantee repayment of $30, of debt, including interest."

"The matter of determining how much debt a company may reasonably carry, i. e., the debt ratio appropriate, is not determinable by any mathematical formula or from any statistical or financial handbook. * * *"

In its determination of a fair rate of return on a 45% debt ratio and 55% common stock equity, the Commission states (p. 10 of its Order):

"The composition of a utility's capital structure affects its operating costs and earnings requirement. *Debt capital is much cheaper than equity capital, particularly with the prevailing level of Federal income taxes.* A prudent capital structure is one conducive to the lowest cost of service that is consistent with a sound financial posture.

"The record shows that Southern Bell's debt ratio, or the percentage of long-term debt in its total capitalization, had declined from 45.8% at the end of 1947 to 22.3% at December 31, 1954. It was still 22.3% at December 31, 1955. During the test period, the debt ratio averaged 21.3%. While the company's debt ratio was thus declining, the debt ratios of the privately-owned electric utilities in the United States rose from 46.8% at the end of 1947 to 50.4% at December 31, 1954, and that of the natural gas companies advanced from 50.8% to 61.8% during the period * * *. Moreover, at December 31, 1954, the privately-owned electric utilities had a composite of 12.4% of preferred stock in their capital structures and the natural gas companies 7.8%; but Southern Bell's capitalization is completely devoid of preferred stock, an admittedly lower cost security than common stock. And during 1955, of all the new money securities issued by the electric and gas utilities, long-term debt consituted 59.5% and 71.6%, respectively, and preferred stock represented 15.5% and 9.4% respectively. It is apparent that while the managements of the electric and gas utilities have been seeking to reduce their overall cost of capital, the management of Southern Bell has been steadily increasing the overall cost of capital to the prejudice of the telephone subscribers."

Plaintiff contends that in computing its earnings requirement, the Commission increased actual earnings by $596,000—a theoretical amount by which income taxes would be reduced—with a 45% hypothetical debt ratio; that this fictitious increase in income and downward adjustment in income taxes is based upon the claim that the Telephone Company should

be considered as having long term debt in its capital structure (which it does not have), and as having paid interest upon that long term debt (which it has not paid).

Plaintiff further argues that the Commission invaded the reasonable range of discretion of its Board of Directors. Its officials testified, in substance, that the present debt ratio of approximately 22% is the result of prudent and sound policies.

On Page 26 of the Commission's Order, it is stated:

"If at any time in the future, the company's investors are prejudiced in their enjoyment of a fair and equitable return, this Commission will be available for appropriate rate adjustments."

As appears from its Order, the Commission has retained jurisdiction to act upon any revision of the amount of the reduction which can be based upon competent evidence. Thus, the door is not closed to the Telephone Company in the proceedings in which the order herein involved was rendered.

A test period, the four months ending October 31, 1955, was chosen by the Telephone Company as being representative and adequate for determining the going level of its Louisiana intrastate operations. The record shows, and it is not seriously disputed by either party, that the following composition of Southern Bell's net average investment in its intrastate property in Louisiana during the test period is as follows:

| | |
|---|---|
| Telephone Plant in Service.. | $178,796,713. |
| Telephone Plant under Construction | 5,611,424. |
| Property Held for Future Telephone Use | 36,804. |
| Materials and Supplies | 2,539,005. |
| Cash Requirements | 346,055. |
| Total Gross Investment | $187,330,001. |
| Depreciation Reserve | 32,699,246. |
| Net Investment | $154,630,755. |

The Commission adopted a net investment rate base by eliminating certain items above enumerated, as follows:

| | |
|---|---|
| Net Investment (supra) | $154,630,755. |
| Eliminations: | |
| Telephone Plant under Construction | 5,611,424. |
| Materials and Supplies.. | 2,539,005. |
| Cash Requirements | 346,055. |
| | $ 8,496,484. |
| Net Investment Rate Base | $146,134,271. |

Mr. A. L. Groce, a witness for the Telephone Company, submitted the following income data, based on the Company's books and records covering the 4-month test period:

| | Annualized |
|---|---|
| Operating Revenue | $63,469,992. |
| Operating Expenses (Including Taxes) | 55,266,228. |
| Net Operating Income | $ 8,203,764. |

By dividing the Telephone Company's annualized net operating income of $8,203,-

764., by the net investment rate base of $146,134,271. found by the Commission, we obtain a 5.61% rate of return. By dividing $8,203,764. by the Telephone Company's net investment figure of $154,630,755., we obtain a 5.31% rate of return.

In the case of Gulf States Utilities Co. v. Louisiana Public Service Commission, supra [222 La. 132, 62 So. 253], this Court said:

"* * * Hence, if 6% is and has been considered by the Commission to be a just and equitable rate of return, it would seem that refusal to grant an applicant a rate increase which would enable it to earn 6% would be inequitable and unjust in the absence of exceptional circumstances."

The parties to these proceedings admit that this rate of 6% is not res adjudicata. The Telephone Company refers to it as "The criterion established by this Court."

In view of the fact that there seems to be no prescribed formula for the fixing of "reasonable and just" rates; that it is the result reached, not the method employed, which is controlling; that the Commission does support by authority its determination of a fair rate of return on a capital structure based on a 45% debt ratio and 55% common stock equity; that it is not presently patent and obvious that the Telephone Company will be unable to realize a fair and just return on its investment on a capital structure of 45% debt ratio and 55% common stock equity; that the Commission has kept the door open for a revision of its order, after a trial and the hearing of evidence in the same proceeding in which the order herein involved was rendered; and in view of the status of the American Telephone & Telegraph Company and Southern Bell Telephone & Telegraph Co.; we are of the opinion that there are presently no exceptional circumstances in this case authorizing a finding that the action of the Louisiana Public Service Commission is arbitrary, capricious, and confiscatory.

For the reasons assigned, the judgment of the trial court, setting aside Order 6993 of the Louisiana Public Service Commission, issued June 30, 1956, reducing the rates of plaintiff, is reversed and set aside; the interlocutory and permanent injunctions heretofore issued are recalled and set aside; Order No. 6993 is decreed to be in full force and effect; and the judgment of the lower court, rejecting the demand of plaintiff for an increase in rates, is affirmed. All costs to be paid by plaintiff.

FOURNET, C. J., is of the opinion that inasmuch as this case is so tremendous in scope, of such far reaching effect and importance, it should in the interest of justice, be fully reargued and that to this end a rehearing should be granted.

SIMON, J., being in full accord with the views expressed by FOURNET, C. J., and because of the magnitude and far reaching effects of the issues herein presented, feels that a rehearing should be granted in this case for further argument and reconsideration.

McCALEB, J., recused.