On Rehearing
HAMITER, Justice.
The facts and circumstances leading up to the instant litigation are fully set forth in the original opinion of this court, and no useful purpose would be served by restating them on this rehearing. Suffice it to say that the primary question for our determination in this cause is whether Order No. 6993 of the Louisiana Public Service Commission, heretofore approved by this court (Southern Bell Telephone and Telegraph Company v. Louisiana Public Service Commission, 232 La. 446, 94 So.2d 431), required the plaintiff to refund 20% of its revenues received from independent connecting companies for intrastate toll messages originating in the latter on a “sent paid” basis or terminating there as “received collect” calls. (The concluding portion of the order was quoted in full initially.) On the first hearing we held that such refunds had to be made.
A careful consideration of the pronouncements supporting the holding has not revealed any errors which would warrant a change in the former decree, and an elaboration of our assigned reasons for the judgment seems unnecessary. Nevertheless, there will be discussed hereinafter certain of our findings and conclusions which plaintiff, on this rehearing, asserts are erroneous.
Firstly, it is said that the “most obvious error of findings of fact contained in the *73 majority opinion is the finding that the reduction in intrastate toll revenue made by the Company did not take into account the increase in volume subsequent to the test period, upon which Order No. 6993 of June 30, 1956 was based.” Evidently, the finding to which reference is thus made has been misinterpreted by plaintiff. What we found was that the company, for the purpose of making the ordered refunds respecting intrastate toll revenues, did not give consideration to “the increase in volume resulting from a lower rate”. And such finding is supported by the record, particularly by the testimony of plaintiff’s general accounting manager — Mr. Eugene M. Robinson. During the hearing in the district court this witness, while comparing data respecting the test and refund periods, was asked the specific question: “In any event, as far as this comparison is concerned, it does not reflect the effect of any acceleration due to the lower rates, does it?” His answer was: “Well, no. In other words— no.”
Next it is urged that the “majority has erred in placing a construction on the Commission’s Order No. 6993 which increased the dollar amount of the reduction clearly beyond the amount found to be justified in the Order itself ($3,940,000 annually on the basis of the test period operations).” Just as was concluded originally, it appears that the intention of the assailed order was not to prescribe any specific amount for the annual reduction; and that all of the parties so interpreted it, including this plaintiff. In the body of such order under a heading entitled “Summation of Principal Findings”, the commission plainly stated that the reduction should be for the annualized amount of $3,940,000 “based on operations during the test period”. If it had been intended that the mentioned sum was controlling and conclusive certainly the quoted qualifying phrase would not have been used. Moreover, the plaintiff itself concedes (in fact, it introduced documentary evidence showing) that it voluntarily refunded considerably in excess of the an-nual sum specified. And in oral argument here its counsel admitted that the recited[1] amount was merely an estimate based wholly on the test period of four months (annualized) .
Incidentally and interestingly, the record (in a stipulation) and the briefs of plaintiff’s counsel disclose that not only did Southern Bell make refunds to its customers on charges for use of its facilities in connected calls, but it also refunded to them 20% of that part which it was obliged under its contracts to remit to the independent connecting companies for the use of the latter’s lines. According to our interpretation of Order No. 6993, as indicated in the original opinion, the last mentioned refund was not required.
Thirdly, plaintiff complains that the “majority opinion is in error in holding that independent connecting companies collect toll rates for the account of Southern Bell, and [hence] is in error in considering that there is any contradiction in Southern Bell’s refunding to its customers while refusing to refund to customers of connecting companies. * * * ” And in support of this complaint it argues: “ * * * These errors necessarily flow from the erroneous assumption that the toll settlement contracts establish subscriber rates and that the rates charged and collected by the independent companies are rates for Southern Bell service. This assumption by the majority is without support anywhere in the language of the connecting company agreements =i= *
“The error apparently stems from a failure to distinguish between the rate a company charges the public (which must be established by the Commission and which is applicable to all of the company’s customers whether or not interconnection of facilities is involved) and the settlements made between two companies for the use of each others facilities in rendering service to their customers. The toll settlement contracts are concerned only with such settlement payments.
*74 “The toll settlement agreements do not fix rates. * * ■ * ”
Here plaintiff appears to he contending that the portion of the charges collected by the independent companies and remitted to it are not “rates” within the contemplation of the order in question. Conceding that this limited application of the term “rates” is proper, it seems immaterial inasmuch as such order requires a 20% refund on “all intrastate toll rates and charges.” Furthermore, even though plaintiff refers to the payments to it by the independent companies as “settlements” they are in truth nothing more than settlements of charges for the use of plaintiff’s lines in making intrastate connecting calls. In this regard it is especially pertinent to note the language of the agreements. Therein it is provided: “Each company will be responsible for collection of all charges payable by its customers for telephone communications originating or terminating on its system, and will account and be responsible to the other for the latter’s portion thereof. * * * ” Thus, the method employed by the respective companies for settling the amount due each on connecting calls is unimportant; for, as aforeshown, the agreements themselves plainly consider the portions remitted as charges. (Italics ours.)
Next plaintiff asserts that the “Commission was in error in stating, and the Court is in error in accepting the statement of the Commission, that Southern Bell raised the rates of the independent companies following the decision of this Court in 1960 in favor of Southern Bell. * * *” Neither the commission nor this court found that Southern Bel! had raised the rates of the independent companies. The finding was that plaintiff had (to quote the language of the commission) “ * * * increased its joint toll rates with the independent telephone companies to the extent permitted * * *.” (Italics ours.)
If this finding by the commission (as approved by this court) was incorrect plaintiff could and should have demonstrated the error on the trial of the case. This it did not do. Nor did it suggest in its original brief to this court that such finding was erroneous. Under these circumstances the assumption is that it was a correct statement of the facts of which the commission took official notice.
Finally, plaintiff contends that the “majority is in error in holding that the disparity in the rates of the various companies constitutes discrimination and that such disparity was caused by Southern Bell.” In support of this contention certain examples are given with the view of showing that even if refunds were made under the order as interpreted by the commission this would not completely prevent a disparity of rates. It was not concluded originally, and cannot now be correctly asserted, that exactly equal rates would prevail in all cases, particularly when (as here) more than one company is involved in making and completing calls. But it may well and properly be observed that, in the absence of extenuating circumstances, sound practice and reason dictate that the toll charges between any two points can and should be the same in both directions.
Insisting that the mentioned desired result was not produced by the commission’s disputed order, plaintiff argues that it refunded 20% of the entire charge on a call for which it was the collecting agent (a portion of the charge, under the agreement, had to be sent to the independent connecting company) whereas by virtue of the order only 20% of Southern Bell’s charge would be refunded on a call where the independent company performed the collecting. However, as previously pointed out, this disparity was brought about solely by plaintiffs improper application of the order. It was not obliged to refund 20% of the entire charge; the refunding of only 20% of its portion was required. True, this action on the part of plaintiff may have resulted in a windfall for or overpayment to its customers. but such was not the fault of the commission.
For the reasons assigned the judgment rendered herein on the original hearing is *75 now reinstated and made the final decree of this court.
FOURNET, C. J., dissents and will assign written reasons.
HAMLIN, J., dissents with written reasons.
SANDERS, J., dissents.