555 So.2d 1370 (1990)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 89-CA-2120.
Supreme Court of Louisiana.
February 5, 1990.
Rehearing Denied March 22, 1990.
*1371 Herschel Abbott, Jr., Edward H. Bergin, Jones, Walker et al, Larry S. Bankston, Donald A. Hoffman, Hoffman, Sutterfield et al, for plaintiff-appellant.
Robert Rieger, Louisiana Public Service Com'n, Frank J. Uddo, Uddo, Porter et al, Michael R. Fontham, Paul L. Zimmering, Noel J. Darce, Stone, Pigman et al, Katherine King, for defendant-appellee.
William J. Guste, Jr., Atty. Gen., J. David McNeill, III, Richard M. Troy, Asst. Atty. Gen., Paul H. Spaht, Kantron, Spaht et al, Deborah J. Winegard, for intervenor appellee.
LEMMON, Justice.
This is a direct appeal from a judgment denying a petition by South Central Bell Telephone Company (Bell) to enjoin a May 25, 1989 order of the Public Service Commission (PSC) reducing Bell's rates by $35,398,000 annually.[1]
On March 1, 1988, the PSC issued an order in two Bell rate cases that had been in progress for several years. The order denied Bell's request to increase annual depreciation and amortization expenses and required Bell to refund to its customers $30,000,000, plus interest, of the revenues Bell had been collecting subject to refund since Bell's implementation of the increased *1372 depreciation based on a federal court's ruling on the issue.[2] Bell was required by the order to agree not to increase its billings to its customers because of the order and not to file an application for a rate increase before January 2, 1990. After the order Bell's revenue collections were no longer subject to refund.
Later the same month the PSC, allegedly prompted by a newspaper article critical of the PSC's examination of Bell's earnings, initiated an investigation of Bell's earnings, rate of return and construction program. The investigation was given a new docket number. To conduct the investigation the PSC hired special financial and accounting consultants and legal counsel.
By letter dated April 22, 1988, special counsel recommended that $32,000,000 of Bell's annual revenues be collected subject to refund during the investigation. Special counsel stated that this amount represented the difference between Bell's revenue under its then existing authorized return on equity and special counsel's estimate of the expected return on equity based on changes in certain financial indicators between 1984 and 1988.
The PSC issued an order on April 27, 1988 subjecting that portion of Bell's revenues to refund. Bell appealed the April 27 order, and the matter was held in abeyance pending the outcome of the PSC's investigation.
After extensive hearings between July 1988 and January 1989 the PSC issued an order on May 25, 1989, requiring Bell, among other things, to reduce its rates by $35,398,000 annually. On June 16, 1989, the PSC issued an order which reaffirmed the rate reduction and ordered a refund of $36,436,000 of revenues that had been collected since April 27, 1988. Bell immediately petitioned for judicial review of these orders by the district court. La.R.S. 45:1192.
Shortly thereafter Bell filed a petition for a preliminary injunction in the district court. The court granted a temporary restraining order with respect to the rate reduction. The restraining order kept the previously existing rates in effect and prevented any monetary losses which Bell would have sustained from the rate reduction required by the PSC's June 16 order.
At the hearing on the preliminary injunction Bell attempted to show that all similarly situated utilities had higher authorized rates of return and that Bell was relegated to a position which made it difficult or impossible to find investors.
The district court denied the preliminary injunction and dissolved the temporary restraining order. The court, relying on South Central Bell Telephone Co. v. Louisiana Public Service Commission, 340 So.2d 1300 (La.1976), and Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935), ruled that Bell was required to prove the PSC's actions resulted in confiscation of Bell's property in order to be entitled to injunctive relief.
Bell then appealed to this court. La. Const. art. IV, § 21(E). However, Bell's motion for a stay order pending the appeal was denied.
To obtain injunctive relief the applicant usually must establish that irreparable injury, loss, or damage may result if the requested relief is not granted. La.C. C.P. art. 3601. Preliminary injunctions may be entered prior to trial on the merits in order to protect the applicant from irreparable injury during the pendency of the action. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Haughton Elevator Division v. State of Louisiana, 367 So.2d 1161 (La.1979); Schwegmann Bros. Giant Super Markets v. Louisiana Milk Commission, 290 So.2d 312 (La.1974); J. Friedenthal, M. Kane & A. Miller, Civil Procedure § 15.4 at 702 (1985).
*1373 A showing of irreparable injury, however, is not necessary when the deprivation of a constitutional right is involved. South Central Bell Telephone Co. v. Louisiana Public Service Commission, 340 So.2d 1300 (La.1976); see also Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury); C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 440 (1973). When a violation of federal due process or of state property protection guarantees is shown, a court may enjoin the constitutional violation. South Central Bell Telephone Co. v. Louisiana Public Service Commission, 340 So.2d 1300 (La.1976); Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935).
Although the finding by the district court that Bell failed to establish an unconstitutional confiscation was not manifestly erroneous, injunctive relief was still appropriate if Bell made a showing of irreparable injury.
The trial court relied on two prior decisions of this court. The case of South Central Bell Telephone Co. v. Louisiana Public Service Commission, 340 So.2d 1300 (La.1976), is distinguishable because it was a rate increase case initiated by the utility, while the present request for injunction involves a rate decrease case initiated by the PSC.[3] Injunctive relief is not favored in rate increase cases. In rate increase cases the granting of a mandatory injunction would permit the utility to implement an increase and maintain the increase in effect during the course of the proceedings before the merits of the increase are finally determined by judicial review. Injunctive relief is generally not favored because regulatory lag (the delay between the petition for a rate increase and the date of effectiveness of the increase by administrative or judicial determination) is a risk to be borne by the utility which makes the decision as to the time for filing for a rate increase.[4] See Louisiana Power & Light Co. v. Louisiana Public Service Commission, 523 So.2d 850 (La.1988).
The present case is a rate decrease case, as previously noted. At the time of the May 25, 1989 order for a rate decrease Bell's rates had been in effect for a significant period of time. One generally recognized purpose of a preliminary injunction is to preserve the status quo during the pendency of further judicial proceedings, and injunctive relief would merely have kept the long-standing rates in effect pending review.
The case of Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935), relied on by the trial court, involved a rate decrease case. This court held, as to the utility's contention that the decrease in that case was unreasonable, unfair and confiscatory, that the utility failed to prove the reduction precluded the company's being able to realize a fair and just return upon its investment. However, the utility had also argued irreparable injury as a basis for injunctive relief. As to this contention, this court held there was no showing that the subscribers would fail to pay the difference in rates for the interim period if the utility ultimately prevailed in the litigation and called upon the customers to pay the difference.
In the present case the trial court did not address the issue of irreparable injury separately from the confiscation issue. In our view Bell proved irreparable injury.
In utility rate determinations there is a fundamental rule that rates are exclusively prospective in application and *1374 that future rates may not be designed to recoup past losses. Neither the PSC nor the courts may order a rate increase that is retroactive to a time before the date of the order. Louisiana Power & Light Co. v. Louisiana Public Service Commission, 377 So.2d 1023, 1028 (La.1979) (citing Transcontinental & Western Air v. Civil Aeronautics Bd., 336 U.S. 601, 69 S.Ct. 756, 93 L.Ed. 911 (1949)); see also Louisiana Power & Light Co. v. Louisiana Public Service Commission, 523 So.2d 850 (La. 1988). Bell argues that it will suffer irreparable injury in the present case because this prohibition against retroactive rate making precludes Bell's ever recovering from its customers, in the event of ultimate success on the merits of the rate decrease case, the difference between the two rates for the period between the May 25, 1989 PSC order and the date the rate decrease case is finally decided.
The prohibition against retroactive rate making did not exist at the time of this court's decision in Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935). In fact, when balancing the interests of the parties in that case, this court noted that if Southern Bell prevailed on the merits, it could then seek redress through the courts to collect the difference from the customer. The court further noted that Southern Bell "would have at its command a strong coercive method to compel payment without litigation by advising the subscriber that his service would be canceled if he failed to pay within a reasonable period of time". Id. 164 So. at 789. Irrespective of the practicality of this solution in the present case, the current prohibition against retroactive rate making and against recouping losses retroactively by means of a surcharge precludes Bell from recovering its losses in this case in the manner suggested by the 1935 decision or in any other manner. Bell will therefore suffer irreparable injury if the injunction is not issued.
Injunctive relief has also been utilized to correct mechanical inadequacies in the judicial system. Developments in the Law of Injunctions, 78 Harv.L.Rev. 993 (1965). To that end injunctive relief may be granted when the applicant is being threatened by some injury for which he has no legal remedy. See Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929), which held that the payment of an allegedly unconstitutional tax, when state law did not provide a remedy for its return if the statute were ultimately adjudged invalid, constitutes irreparable harm. See also C. Wright & A. Miller, Federal Practice and Procedure §§ 2942, 2944 (1973). Moreover, La. Const. art. I, § 22 provides that every person shall have an adequate remedy by due process of law.
The preliminary injunction is particularly useful when, as here, modern trends of procedural fairness and efficiency have led to a recognition of new inadequacies. Developments in the Law of Injunctions, 78 Harv.L.Rev. 993 (1965). Given the prohibition against retroactive rate making, there is no other administrative or judicial remedy which can avert the irreparable injury threatened to Bell in this case.
An additional factor favoring the issuance of the requested injunction is the long-standing precept that a preliminary injunction is issued to preserve the court's power to render a meaningful decision after a trial on the merits. See Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Haughton Elevator Division v. State of La., 367 So.2d 1161 (La. 1979); Schwegmann Bros. Giant Super Markets v. Louisiana Milk Commission, 290 So.2d 312 (La.1974); C. Wright and A. Miller, Federal Practice and Procedure § 2947 at 423-24 (1973); J. Friedenthal, M. Kane & A. Miller, Civil Procedure § 15.4 (1985). If a preliminary injunction is not granted in this case and Bell ultimately prevails on the merits, the court will be unable to award to Bell the $35,398,000 in annual earnings that it will have lost because of the prohibition against retroactive rate making.
On the other hand, there is no substantial risk to Bell's customers. La. Const. art. 4, § 21(D)(4) provides that the utility shall make full refund, with legal interest thereon, if a proposed increase which has been put into effect is finally disallowed, in whole or in part. Therefore, if the decrease in rates ordered by the PSC is ultimately upheld in this case, Bell will be required to make a full refund, with legal interest thereon, to its subscribers.
Furthermore, Bell's customers will be fully protected, in the event the decision in the rate case is unfavorable to Bell, by the security required for the injunction.[5] The *1375 $35,398,000 annual loss that Bell will permanently sustain far outweighs the harm that Bell's individual customers will suffer from having to wait until the matter is decided on the merits before receiving reimbursement.[6]
In summary Bell has proved that irreparable injury, loss, or damage may result if its request for preliminary injunctive relief is not granted, inasmuch as the prohibition against retroactive rate making precludes the court from awarding Bell complete relief in the event of success on the merits. Bell stands to lose almost $3,000,000 per month during the course of the proceedings in the rate decrease case. The rates that Bell seeks to keep in effect have been in effect since 1984, and the PSC in 1986 allowed the rates to remain in effect subject to refund during the depreciation study which led to the March 1, 1988 order. Under these circumstances, and on the record in this case, there is a reasonable possibility that Bell will prevail on the merits of the rate case. Moreover, there does not appear to be any disservice of the public interest or risk of injury to Bell's customers who are adequately protected by the right to a refund and the security to be furnished before the injunction is issued.
Accordingly, the judgment of the district court is reversed, and the case is remanded to the district court to render judgment granting a preliminary injunction to South Central Bell Telephone Company upon furnishing security in an amount deemed adequate by the court to reimburse its subscribers for the difference between the rates at issue, plus interest, in the event that the order for a rate decrease is upheld after judicial review on the merits of the order.
DENNIS, J., concurs.
DIXON, C.J., respectfully dissents.
PER CURIAM
The decision on original hearing does not prevent the PSC from reconsidering, on its own motion within a reasonable time, and order issued by the PSC. However, the March 29, 1988 action of the PSC did not purport to take such action.
The March 1 order was clearly intended to dispose finally of all issues pending in that matter before the PSC and to terminate the "subject to refund" order previously existing. The March 29 order did not notify Bell of an intent to reconsider the March 1 order or suggest in any way that the PSC was attempting to exercise any such right. Rather, the March 29 order initiated an investigation into Bell's current revenue requirements with the aim of reducing rates if the rate of return proved to be excessive. The merits of the eventually ordered reduction are presently under judicial review.
The application is denied.
NOTES
[1] The merits of the rate decrease are not now before this court. The only issue in this appeal involves the district court's denial of injunctive relief which would have kept the existing rates in effect during litigation on the merits of the decrease.
[2] A 1984 ruling of a federal appellate court allowed Bell to use depreciation rates presented by the Federal Communications Commission. That ruling was reversed by a 1986 judgment barring federal preemption of state regulation over depreciation of dual jurisdiction property for intrastate ratemaking purposes. Louisiana Public Service Commission v. Federal Communications Commission, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).
[3] Contrary to PSC's protestations, the March 1, 1988 order was a final decision. Neither party sought review of that decision which ordered a refund and permitted Bell thereafter to collect revenues without being subject to refund. Instead, the PSC initiated a new proceeding with a new docket number to determine if Bell's return on equity was excessive so that a decrease might be required. The PSC noted that Bell's last application for a rate increase had been filed in 1983, culminating in a November, 1984 order.
[4] Regulatory lag does not apply in this case because the PSC initiated the proceeding for a rate decrease.
[5] A preliminary injunction does not issue until the applicant furnishes security in the amount fixed by the court to indemnify the person enjoined for the payment of costs incurred and damages sustained. La.C.C.P. art. 3610. Bell concedes its obligation to furnish security to reimburse its subscribers for the difference between the two rates if the case is ultimately decided against Bell.
[6] According to the PSC, its rate decrease order was structured to provide an optional local calling rate reduction plan which provides for decreases in certain long distance charges to those customers who opt for the plan. Because it will be impossible to determine who would have opted for the plan if the injunction had not prevented offering of the plan to Bell's customers, the PSC contends that it will be impossible to identify the individual customers entitled to a refund.

Refunds always spurn some complex issues. Broussard v. Louisiana Public Service Commission, 548 So.2d 940 (La.1989). Nevertheless, there is no reason why Bell should not be able to identify most of the customers who paid the existing rates and may be entitled to a refund. The only loss caused by the injunction to the customers who would have subscribed to the optional local calling plan is the delay in implementation until finality of judicial review, and that delay does not warrant denial of injunctive relief.