CALOGERO, Justice.
Following a decision by the United States Supreme Court,[1] which held that the Louisiana Public Service Commission was not preempted by the Federal Communication Commission, and was therefore at liberty to set its own more stringent depreciation rates for intrastate plant, the Commission on December 10,1986 ordered that there be refunded to South Central Bell’s customers $176 million ($143 million, and $33 million of interest accrued thereon). This represented that part of the company’s rates and monthly billings aseribable to the temporarily permitted more liberal depreciation during the three year period between 1983 and 1986, inclusive.
South Central Bell’s plan in response to the Commission order included Bell’s determining their identifiable customers during the inclusive period, and estimating an additional number of customers whose existence and identification were not ascertainable from Bell’s records. An estimate was required because customers who disconnected (or discontinued service) more than six months prior to any given check of the company’s computer records are routinely removed from the computer, according to South Central Bell.
Accordingly, with approval of the Public Service Commission, South Central Bell divided $131 million (and interest) among its readily identifiable customers during the pertinent time period, while setting aside $12 million (an intentionally excessive sum — overestimating would assure that South Central Bell would not suffer an unintended loss) for other customers (not readily identifiable, most of them “disconnects”) during the 1983-1986 period, and to cover the administrative cost of the refund.
In the ensuing months South Central Bell refunded the $131 million to its readily identifiable residential and commercial customers. Regarding the $12,000,000 set aside fund, South Central Bell advertised extensively, used informational mailing and solicited inquiry, thereby discovering additional former customers. They ultimately paid out $4 million of the $12 million, leaving undistributed $8 million, just 4.5% of the original $176 million ordered refunded by the Commission.
Of the refund checks totalling $131 million sent to the readily identifiable customers, many checks were returned to South Central Bell unclaimed. Some $200,000 in *942 such checks were thereafter turned over by South Central Bell to the Department of Revenue and Taxation pursuant to the Uniform Disposition of Unclaimed Property statute (La.R.S. 9:151 et seq.). These monies are not at issue in the instant case, for Bell and the Commission readily conceded that such was property “unclaimed by the owner” under the statute.
Relative to the $8 million, the Commission, which in its original order had reserved to itself what might ultimately be done with any undistributed money (“inability to comply with this [order] shall be reported promptly to this Commission ... The docketed cases referred to herein shall remain open ...” — order of December 10, 1986), decided on October 18, 1988 to order the $8 million refunded to South Central Bell customers in the form of a line item credit on current billings.
The Secretary of the Louisiana Department of Revenue and Taxation took the position that this $8 million was unclaimed property presumed abandoned under R.S. 9:160, which, under R.S. 9:151, et seq., es-cheats to the State.[2]
Accordingly, and in order to claim the $8 million as abandoned property, the Secretary filed this lawsuit seeking an injunction to prohibit South Central Bell from complying with the Public Service Commission's refund order of October 18, 1988.
The district court judge rendered a judgment in favor of the Commission and South Central Bell, denying plaintiff injunctive relief and ordering compliance with the Commission's refund order of October 18, 1988.[3]
*943 The Department of Revenue and Taxation appeals that decision directly to this Court. La. Const. Art. 4 § 21(E). Their chief contention is that the $8 million constitutes refunds held by business associations, which under R.S. 9:160 escheated to the state on December 10, 1987, one year after the Commission’s order of December 10, 1986.
Numerous arguments are put forth by defendants in defense of the district court judgment. One substantial argument entails the Constitutional rate making authority of the Commission. Another is the Commission’s contention, supported by the testimony of their expert, that the excess depreciation funds constitute a further obligation of ratepayers and thus legitimately belong to ratepayers, who are beneficiaries of the Commission’s refund order.
For resolution of this case, however, we need only examine the Uniform Disposition of Unclaimed Property statute and the facts herein to determine that the plaintiff is not entitled to the injunctive relief he seeks.
Pertinent to this type of case (R.S. 9:160. “Refunds held by Business Associations”) the Uniform Disposition of Unclaimed Property Act, La.R.S. 9:151, et seq. provides:
Except to the extent otherwise ordered by the court or administrative agency any sum that a business association has been ordered to refund by a court or administrative agency which has remained unclaimed by the owner for more than one year after it became payable in accordance with the final determination or order providing for the refund, whether or not the final determination or order requires any person entitled to a refund to make a claim for it, is presumed abandoned. (R.S. 9:160) [Emphasis provided.]
Defendants contend, and not without persuasive reasons, that there are no owners regarding the $8 million (note in the discussion above, the defendants’ contention that the $12 million dollars, an intentionally excessive estimate, turned out to be over generous by $8 million). They further contend that even if there are some undiscovered owners who have neglected to make a claim, the Commission’s October 18, 1988 second order (directing South Central Bell to dissipate the $8 million by giving line item credit on current billings to current subscribers) represents an “otherwise ordering] by the ... administrative agency.” (Note the outset clause to Section 160 above).
The most obvious deficiency in plaintiff’s case, however, in their attempt to have the $8 million qualify as “presumed abandoned” property, is the absence of any sum’s ever having become “payable in accordance with the final determination or order providing for the refund.”
The simple fact is that no part of the $8 million has become payable (to any known, much less identifiable former subscribers) in accordance with a final determination or order providing for a refund.
The Louisiana Public Service Commission order No. U-15445 and U-15955 dated December 10, 1986, upon which plaintiff’s cause of action is based, merely required “South Central Bell Telephone Co. ... to refund ... to its subscribers” the excess depreciation portion of its rates during the involved three year period (and to make every effort to do so “prior to January 31, 1987”), with the further directive that the *944 case “shall remain open” (“pending the Commission’s final determination of the depreciation issues, and accounting practices under investigation”). It seems clear from the order that the case was left open so that further disposition might be considered by the Commission in the event that, as required by the Order, South Central Bell should thereafter “promptly report to [the] Commission” its “inability to comply with this provision.”[4]
Absent a “final determination or order providing for the refund,” the property is not presumed abandoned under R.S. 9:160. Nor do any other provisions of the Uniform Disposition of Unclaimed Property statute apply to “refunds” such as are involved in this case.
Inasmuch as plaintiff has not proved that the $8 million is “presumed abandoned” property under the Uniform Disposition of Unclaimed Property statute, his suit for an injunction must fail. Any further discussion of the Commission’s right to order line item credits on current subscriber’s billings (as a means of disposing of the $8 million) would constitute dicta. In all events it is irrelevant to the merit of this plaintiff’s claim in this case.

Decree

For the foregoing reasons the judgment of the district court denying plaintiff’s request for preliminary and/or permanent injunction is affirmed.
AFFIRMED.

. Louisiana Public Service Comm’n v. FCC, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).

. Under the Uniform Disposition of Unclaimed Property Statute, R.S. 9:151-9:182 the Secretary of the Department of Revenue and Taxation for the State of Louisiana is the administrator of abandoned property. Under the statutory scheme all intangible personal property is subject to the custody of the state as unclaimed property. R.S. 9:154. The administrator receives payment or delivery of property, and "the state assumes custody and responsibility for the safekeeping of the property." R.S. 9:171. The administrator remits "to the State Treasurer all funds received,” whereupon the Treasurer places such funds in the treasury to the credit of the Bond Security and Redemption Fund." R.S. 9:174. However, the administrator retains "in a separate escrow account an amount not less than $100,000 from which payment of claims duly allowed must be made by the administrator.” R.S. 9:174. The assistant director of the income tax section, Department of Revenue and Taxation, who supervises the unclaimed property section of that office, testified that since 1972 $43 million in unclaimed property has been turned over to the Department, of which $3.5 to $4 million has been returned to owners.

. The district court’s reasons for judgment were as follows:
“This suit, filed by the Louisiana Department of Revenue and Taxation ("Department"), seeks to enjoin South Central Bell Telephone Company ("Bell”) from complying with a rate order issued by the Louisiana Public Service Commission ("PSC” or "Commission”) which directed Bell to credit its customers’ bills in order to refund previous overcollections.
"Briefly, the events leading up to Commission's order are as follows. In 1983, Bell began using for intrastate plant, an accelerated depreciation schedule approved by the Federal Communications Commission for facilities providing interstate service. The PSC refused to permit Bell to change its depreciation rate for intrastate plant and litigation ensued. Finally, in 1986 the United States Supreme Court held that the Louisiana PSC had authority to set its own rates for intrastate plant. The PSC, in turn, ordered the refund.
"The Commission ordered Bell to refund for overcollections. It is important to note at the outset, however, that the term "overcollection” is something of a misnomer. The overcollection resulted from an accounting procedure which affects the timing of capital recovery, not the recovery itself.
"The Department argues that the disputed fund should be considered abandoned property under the Uniform Disposition of Property Act, La.R.S. 9:151, et seq, and as such, should escheat to the State of Louisiana. The Court, however, is persuaded by the defendants’ argument that the fund in question is not unclaimed property at all. The fund was established to compensate unknown ratepayers; that is, a group of individuals or businesses which Bell suspected to have existed during the period in which overcollec-tions were being received. The money in this fund was neither earmarked for particular past customers nor did it represent a specific overcharge to a particular number of customers. In other words, the fund of $12 million simply represented the greatest amount Bell thought it might have to pay to its, then unknown, previous customers. As it turned out, Bell overestimated the amount which would be claimed by $8 million.
“At the time this fund for refund was established, the rate base increased concomitantly. Of course, the rate base must be supported by present ratepayers; hence, the PSC instructed *943 Bell, on October 18, 1988, to flow back to present ratepayers the remaining $8 million by crediting their bills.
“We agree with the defendants that the PSC’s activities in this matter constitute ratemaking, an area subject to the PSC’s exclusive jurisdiction. Moreover, because present ratepayers bear the burden of the higher rate base (as a result of this fund being established), they are entitled to the refund.
“Therefore, this Court denies plaintiff’s request for preliminary injunction, and holds that the defendant, South Central Bell Telephone Company, shall refund $8 million to present ratepayers by crediting their bills pursuant to the order issued by the Louisiana Public Service Commission on or about October 18, 1988.
“The Court also notes that it was agreed by stipulation of the parties that the decision rendered in connection with the petition for a preliminary injunction would apply to and be binding on plaintiff’s request for a permanent injunction. Therefore, the permanent injunction prayed for is also denied.”

. Special Order for Providing Refunds, Louisiana Public Service Commission, dated December 10, 1986:
IT IS HEREBY ORDERED that
(1) South Central Bell Telephone Company is hereby required to refund by check to its subscribers all amounts collected subject to refund in the two docketed cases referred to hereinabove....
******
(3) The Company is to make every effort to refund to individual customers the specific amounts collected under the accelerated depreciation rafes and excess rates charged pri- or to January 31, 1987. Inability to comply with this provision shall be reported promptly to this Commission.
******
(5) The docketed cases referred to herein shall remain open pending the Commission’s final determination of the depreciation issues and accounting practices under investigation.