SALVADOR J. RANDAZZO, INDIVIDUALLY AND AS EXECUTOR OF THE SUCCESSION OF LAWRENCE J. RANDAZZO AND SUCCESSION OF JOSEPHINE L. RANNDAZZO AND LORENE A. RANDAZZO

VERSUS

PETRINA RUIZ IMBRAGUGLIO, ET AL

* NO. 2021-CA-0679

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 15-1017, DIVISION "D"
Honorable Darren M Roy,
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro Tempore Lynn M. Luker)

Salvador J. Randazzo
SALVADOR J. RANDAZZO, PLC
321 Jade Court
Madisonville, LA

    COUNSEL FOR PLAINTIFFS/APPELLANTS


Erica N. Beck
LAW OFFICES OF SIDNEY D. TORRES, III, APLC
8301 W. Judge Perez Avenue, Suite 303
Chalmette, LA 70043

Freeman R. Matthews
ATTORNEY AT LAW
8301 West Judge Perez Drive, Suite 303
Chalmette, LA 70043

    COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**May 25, 2022**

DNA
TFL
LML

Appellants, Salvador J. Randazzo, individually and as executor of the successions of Lawrence J. Randazzo and Josephine L. Randazzo, and Lorene A. Randazzo (hereinafter collectively "Appellants"), seek review of the trial court's May 10, 2021 judgment, which denied their Motion for Injunctive Relief and granted the Motion to Dissolve the Temporary Restraining Order filed by Appellees, Sidney D. Torres, III, and Lena Torres Nunez, individually and as independent administrator of the succession of Lena Randazzo Torres (hereinafter collectively "Appellees"). For the following reasons, we affirm the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Petition for Damages

Appellants and Appellees are some of the members of the Randazzo family. Members of the family inherited property known as the Hilan Double Lot and Highland Avenue property (hereinafter "the Property"). The family members exercised ownership of the Property through a family-owned corporation, which is called the Randazzo Property Corporation (hereinafter "Corporation").

1

In 2018, the Corporation, through its attorney, Sidney D. Torres, III (hereinafter "Mr. Torres"), who is also one of the Appellees, filed a Petition for Damages (hereinafter "Petition") against several defendants, including the St. Bernard Parish Government (hereinafter "the Parish") and its contractor, Hard Rock Construction Company, L.L.C. (hereinafter "Hard Rock Construction"). The Petition alleged, in pertinent part, that the Parish and Hard Rock Construction had illegally encroached on the Property.[1] According to Mr. Torres, who has served as the Corporation's attorney since its formation in 1982, he drafted the petition according to recommendations from one of the Appellants, Salvador J. Randazzo (hereinafter "Mr. Randazzo").[2]

***Proposed Settlement Agreement***

After filing the Petition, Mr. Torres negotiated a proposed settlement agreement (hereinafter "Proposed Settlement Agreement") with the Parish and Hard Rock Construction. Erica Beck (hereinafter "Ms. Beck"), a member of Mr. Torres' law firm, sent an e-mail on August 17, 2020, to the shareholders of the Corporation to notify them of the Proposed Settlement Agreement. In the e-mail, Ms. Beck recommended the Proposed Settlement Agreement and outlined the following terms from it:

---

[1] The lawsuit is entitled *Randazzo Property Corporation v. Hard Rock Construction Company, L.L.C.*, docket number 2018-1701, Division B, 34th JDC, Parish of St. Bernard.

[2] An e-mail from Mr. Randazzo to Mr. Torres, which is dated July 31, 2018, included the following:

> Sidney,
>
> Here is a draft of the lawsuit against St. Bernard Parish Government, Hard Rock Construction and its engineers/surveying company and their insurers.

1. Randazzo Property Corp. transfers ownership of the land directly underneath the encroachments to St. Bernard Parish and grants the Parish a three (3) foot servitude of access immediately surrounding the encroachments.

2. St. Bernard Parish agrees to formally revoke the Third Street road dedication on both sides of Highland Ave., which resolves any potential title issues related to the [Corporation]'s ownership of the [Property].

3. [The Corporation] receives new surveys of the re-subdivided property on both sides of Highland Ave. at no costs to it.

4. [The Corporation] receives payment of $24,000.

Ms. Beck also noted that the Corporation appraised the Property at $32,000.00, while the Parish's appraisal of the Property was $24,800.00. After learning that Appellants objected to the Proposed Settlement Agreement, on September 4, 2020, Ms. Beck sent out another notice and an agenda, which relayed that the Corporation's President, Lena Randazzo Torres, intended to call a special meeting of shareholders on September 25, 2020.

***The September 25, 2020 Meeting***

At the September 25, 2020 meeting (hereinafter "Meeting"), with the exception of Appellants' interests, the shareholders' interests were represented by signed proxies. The signed proxies were made available at the Meeting. Those represented at the Meeting and the value of their shareholder interests as indicated in the Roll Call vote included the following:[3]

PRESENT:

LENA R. TORRES, PRESIDENT             40%
     by proxy through Erica Beck

---

[3] Other persons who attended the meeting included Lorene A. Randazzo; Mr. Torres; an attorney, Freeman R. Matthews; the court-appointed facilitator; and the facilitator's employee.

SUCCESSION OF MANUEL J. RANDAZZO[4]      20%
     by proxy through Woody Woodruff

SUCCESSION OF LAWRENCE J. RANDAZZO      20%
& JOSEPHINE RANDAZZO
     through its executor, Salvador J. Randazzo

HEIRS OF CAMILLE RUIZ[5]
Alex Ruiz      5%
Petrina Imbraguglio      5%
Gerald Ruiz, Jr.      5%
     by proxy through Erica Beck
Cristy Ourso      5%
     by proxy through Rodney Ourso

Ms. Beck served as the proxy vote for Lena Randazzo Torres, who was the President of the Corporation, and acted as representative of a combined fifty-five (55%) of the proxy shareholder interests. Additionally, Ms. Beck chaired the Meeting over Appellants' objections. Appellants demanded copies of the proxies, documentation of the standing of the proxy shareholders, and the proxies' entitlement to vote. Although noting Appellants' objections, Ms. Beck proceeded with the vote. All the represented interests, with the exception of Appellants, voted to approve the Proposed Settlement Agreement.

***Motion for Temporary Restraining Order and Injunctive Relief***

After the Meeting, on October 15, 2020, Appellants filed a "Motion for Temporary Restraining Order and Injunctive Relief" (hereinafter "Motion for Injunctive Relief") against the heirs of decedent Camille Ruiz, namely Petrina Ruiz Imbraguglio, Alex Ruiz, and Gerald J. Ruiz, Jr.; Cristy Ruiz Ourso; the heirs of decedent, Manuel J. Randazzo, Sr.; Lena Randazzo Torres; the Corporation; and Mr. Torres. They sought to enjoin future shareholder meetings for failure of the

---

[4] Manuel J. Randazzo, Sr., died in 2019.

[5] Camille Ruiz died in 2018.

Meeting to comply with Louisiana business corporation law; and they sought to enjoin approval and enforcement of the Proposed Settlement Agreement. Appellants contested, in part, the validity of the proxies cast involving the heirs of Manuel J. Randazzo, Sr., and Camille Ruiz, as well as Mr. Torres' standing to negotiate the Proposed Settlement Agreement. In response, the trial court issued a temporary restraining order, which restrained and enjoined the setting of any more meetings of shareholders or directors during the pendency of the proceedings. Additionally, the temporary restraining order restrained and enjoined any action concerning the Property, including, but not limited to any meetings or agreements with the Parish, any representatives of the Parish, and Hard Rock Construction.

***Motion to Dissolve Temporary Restraining Order***

On October 19, 2020, Appellees filed a "Motion to Dissolve Temporary Restraining Order and Opposition to Motion for Injunctive Relief" (hereinafter "Motion to Dissolve").[6] Appellees argued that Appellants did not demonstrate irreparable harm so as to warrant issuance of a temporary restraining order or a preliminary injunction; moreover, Appellees averred that the Corporation secured proper shareholder authority to approve the Proposed Settlement Agreement. The trial court conducted a hearing on Appellants' Motion for Injunctive Relief and Appellees' Motion to Dissolve on May 6, 2021.

---

[6] The Motion to Dissolve Temporary Restraining Order and Opposition to Injunctive Relief was initially filed by Lena Randazzo Torres and Mr. Torres. However, Lena Randazzo Torres died in 2021. Thereafter, her daughter, Lena Torres Nunez, was substituted as a party as the independent administratrix of the estate. Because Ms. Torres died intestate, Lena Torres Nunez and Mr. Torres, as her children, inherit in equal shares to her interests in the present matter.

*May 6, 2021 Hearing*

At the hearing, Appellees, through their counsel, Ms. Beck, emphasized that Ms. Beck sent notice of the Proposed Settlement Agreement to all shareholders and that Appellees formally noticed a corporate meeting once Appellants objected to the Proposed Settlement Agreement. Appellees explained that most shareholder members submitted proxies because they wanted to avoid a contentious family meeting. Further, Appellees stressed that the proxy statements were detailed and specifically outlined how each party intended to vote. They also emphasized that proxies are allowable under Louisiana business corporation law. Ms. Beck explained the proxy votes and her role as chair of the Meeting as follows:

> As the proxy for Ms. Lena [Randazzo Torres], I did run the meeting, as she was the president. We had - - we have all the numbers laid out in there. But essentially, [she is] a 40% owner[,] and Mr. [Manuel J.] Randazzo[, Sr.]'s wife, who was inheriting everything under his share [,] was a 20 percent owner. Her attorney was there with a signed proxy, Mr. Woodruff. We each had 40% and 20%. In addition, the Ruiz heirs, Ms. Camille Ruiz's children, had proxies. I had three of them. And then Ms. Ourso's husband attended, as well with her proxy. They represented another 20 percent. They did not have a succession open, but they were the heirs and they had season [sic]. That would bring it to 80 percent in favor of this settlement.
>
> The settlement is reasonable. The reasonableness of the settlement [is not] really before this court directly, but we do have documentation in there as to the settlement and why we believe it is reasonable. Other parties were represented by counsel, who showed us proxies believing it was reasonable. We proceeded that way. [We have] got the judgment of possession for Mr. Wooduff's case showing that his heir had full possession by a court order prior to the meeting and, you know, even if there was something we [did not] like about the meeting, we would have been prevented from having another meeting this whole time because of the [temporary restraining order] that was put in place. So [it is] not like, [there is] something we [do not] like, we want to do it again, we [could not] do that.

Appellees added that the terms of the Proposed Settlement Agreement reasonably favored the Corporation because the encroachment permitted was

relatively small; the shareholders received $24,000.00, which constitutes nearly the entirety of the Parish's $24,800.00 appraised value of the Property; and the terms granted the ability to list the Property for sale.

Appellants' counsel, Mr. Randazzo, relayed that Appellants wanted to remove the encroachment. He asserted he did not trust the Parish and that "[there is] nothing that St. Bernard Parish can say to me that [I am] going to take at face value." He described the Proposed Settlement Agreement as a "one-sided deal" and that "they may as well have left the defense attorneys to write it up." With reference to the meeting and the proxy votes, he argued as follows:

> But the way that that meeting was called - - and I think the way future meetings were called - - and I also had spent many time reading Professor Morris's works on the new business corporation law. And she talks about proxies. Proxies are allowed, Judge. As far as - - I checked with Mr. Nunez' office. [There is] no succession opened for Camille Ruiz. [There is] no succession opened for P[e]trina Imbraguglia. They just opened the succession or [sic] Lena Randazzo [Torres].
>
> Your Honor, a proxy has to be based in some legal - - in a legality. You [cannot] simply go to somebody and say - - could you imagine you had 10,000 shares in Exxon, Judge, and you died. They went to your son. And your son tries to go and vote your $10,000 shares of Exxon? They would kick you out the door. They would want to know: Did you open Mr. Roy's succession? Do you have letters testamentary? Do you have a judgment of possession?
>
> I asked Mr. Ourso all of those questions at the meeting. He said: No, we [did not] open succession. No, we have no judgment of possession, but [I am] here with a proxy. [I am] here with a proxy that Ms. Beck sent to him. [I am] here with you and [I am] joining the 40 percent shareholders to push this through without any consideration of whether or not it is in the best interest of the [] Corporation. I do not believe it is.
>
> And -- as you read this, Lena [Randazzo] Torres was a qualified director and she has - - she could not allow her son to handle this settlement because it is - - [there is] a material interest - - familial interest, which is barred by the new corporation law. They simply ignore the new corporation law. They simply ignore succession law

that says you have to [have] a succession open and be appointed executor or administrator then proceed.

Mr. Randazzo further expressed Appellants' objection to Ms. Beck's chairing the Meeting in the place of Lena [Randazzo] Torres, in the following respects:

> If you read the new corporation law - - she [Ms. Beck] says: Just because Lena [Randazzo] Torres was president and gave her a proxy, she should command the meeting. No, she cannot, Your Honor. Any meeting of shareholders or directors, the chairperson of the meeting has to be elected by those members present, whether they are members of the board of directors or members of the shareholders. She [cannot] walk in, as she tried to do and take control of the meeting and say: Here I am. I have everybody's proxy. We're going forward. And [that is] why I filed for a temporary restraining order, Judge.

Appellees countered that Appellants' real reason for opposing the Proposed Settlement Agreement was revealed in paragraph 23 of the Motion for Injunctive Relief wherein Mr. Randazzo stated that "he would not consider entering into any settlement with St. Bernard Parish Government while St. Bernard Parish Government left unsettled the litigation against the plaintiffs in rule and other egregious conduct by St. Bernard Parish Government against the Lawrence and Josephine Randazzo family." In light of same, Appellees requested that the trial court dissolve the temporary restraining order, deny the request for injunctive relief, and reserve Appellees' right to seek damages for wrongful issuance of a temporary restraining order.

Appellants conceded that they had some issues with the Parish and expressed concerns about the Parish's relationships with some members of the Corporation. Appellants pointed out that a family member's husband works for the Parish's Fire Department and that Mr. Torres' son has a garbage contract with the Parish, "[s]o [there are] a lot of disqualifications as far as their - - shares that [she

8

is] talking about being able to vote." Appellants maintained that the effort to approve the Proposed Settlement Agreement contravened Louisiana law; was not in the best interest of the Estates of Lawrence Randazzo and Josephine Randazzo; and that they "need to be compensated correctly."

***Judgment***

At the conclusion of the hearing, the trial court orally ruled that "[t]he Court is going to grant the motion to dissolve the temporary restraining order and deny the injunctive relief" as well as "deny any penalties against Mr. Randazzo, such as attorney's fees and so forth." The trial court rendered written judgment on May 10, 2021, and it provided in pertinent part:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:
>
> (1) Lena T[orres] Nunez, individually and as Independent Administrator for the Succession of Lena R[andazzo] Torres, and Sidney D. Torres, III's Motion to Dissolve the Temporary Restraining Order is granted, and the Temporary Restraining Order issued October 15, 2020, in the above captioned proceeding is hereby dissolved;
>
> (2) Salvador Randazzo, individually and as Executor for the Succession of Lawrence J. Randazzo and Succession of Josephine L. Randazzo, and Lorene Randazzo's Motion for Injunctive Relief is denied.
>
> (3) Lena T[orres] Nunez, individually and as Independent Administrator for the Succession of Lena R[andazzo] Torres, and Sidney D. Torres, III's request for damages, attorneys' fees, and costs is denied.

This appeal ensued.[7]

---

[7] On May 18, 2021, Appellants filed a notice of intent to seek a writ of the trial court's written May 10, 2021 judgment. Appellants obtained an extension of time and timely filed their writ application on June 11, 2021. This Court, in *Randazzo, et al v. Imbraguglio, et al*, 2021-0355 (La. App. 4 Cir. 7/29/21), noted that the trial court's judgment denying injunctive relief was an appealable judgment pursuant to La. C.C.P. art. 3601(C). Inasmuch as Appellants' notice of intent was done within fifteen days of the judgment, Appellants' writ was granted for the sole purpose of

9

## ASSIGNMENTS OF ERROR

On appeal, Appellants assert six assignments of error:

1. Whether the shareholders meeting of September 25, 2020 was improperly held because there was no election of a meeting "chairperson" as required by the Louisiana business corporation laws, and Erica Beck acted as Corporate Secretary, when the duly elected Corporate Secretary, and only living Corporate Officer was present to perform the duties of Corporate Secretary?

2. Whether it was legal for Erica Beck to obtain proxies from the children of decedent, Camille Randazzo Ruiz, who Erica Beck claimed were Camille Randazzo's legal heirs, without the production of formal letters testamentary or a judgment of legal possession placing said children into possession of decedent's estate and where Erica Beck did not produce a copy of Camille R. Ruiz's will or a judgment of possession, or letters testamentary?

3. Whether it was legal for Erica Beck to obtain proxies from Cheryl Randazzo, the surviving spouse of decedent, Manuel J. Randazzo Sr., through her attorney, Walter Woodruff, who had a proxy from Cheryl Randazzo, but, without the production of formal letters testamentary or a judgment of possession placing said Cheryl Randazzo into possession of the Succession of Manuel J. Randazzo, Sr. and where no one produced a copy of Manuel Randazzo, Sr.'s will, a judgment of possession, or letters testamentary?

4. Whether after Erica Beck adjourned the "shareholder meeting," was it legal and proper for her to accept documents and make them a part of the meeting when those documents were not produced during the "shareholder meeting?"

5. Whether the Corporation's President and shareholder of record of 20 percent of the outstanding shares of the Corporation and alleged owner of another 20 shares [Lena Randazzo Torres] was properly considered a "Qualified Director" pursuant to the amended business corporation law, and therefore, was prohibited from having her son act as the attorney to negotiate a settlement of a lawsuit, without disclosing any conflicts of interest?

6. Whether the trial court committed manifest error when it denied Appellants' request for preliminary injunction where Appellants established prima facie evidence of Defendants' violation of

remanding the matter to the trial court to consider the notice of intent as a motion for appeal. On remand, the notice of intent was converted to a motion for appeal.

10

corporation law, and by failing to apply the judicially created exception to La. C.C.P. art. 3601, which allows for the issuance of an injunction without showing irreparable injury when the action sought to be enjoined is a violation of a prohibitory law.

In sum, Appellants seek review of the trial court's denial of their Motion for Injunctive Relief.

## STANDARD OF REVIEW

An appellate court reviews a trial court's decision on the grant or denial of a preliminary injunction under the abuse of discretion standard of review. *Waiters v. deVille*, 2020-0556, p. 8 (La. App. 4 Cir. 12/30/20), ___ So.3d ___, ___, 2020 WL 8455459, at *4 (quoting *Yokum v. Pat O'Brien's Bar, Inc.,* 2012-0217, pp. 6-7 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80). Discussing the standard of review, this Court has explained:

> 'A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent clear abuse of that discretion.' *Cajun Elec. Power Co-op., Inc. v. Triton Coal Co.*, [19]91-1816, 590 So. 2d 813, 816 (La. App. 4 Cir. 1991); *Smith v. West Virginia Oil & Gas Co.*, 373 So. 2d 488, 493 (La. 1979). That broad standard is, of course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion. *See South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent To Own, Inc.*, [20] 07-0599, pp. 4-5 (La. App. 4 Cir. 2/27/08), 980 So.2d 89, 93.

*Id*. See also *Ard v. GrrlSpot, LLC*, 2019-0312, p. 14 (La. App. 4 Cir. 10/23/19), ___ So.3d ___, ___, 2019 WL 5432098, at *6.

## DISCUSSION

### *Preliminary Injunction*

Regarding injunctive relief, La. C.C.P. art. 3601 provides, in pertinent part:

> A. An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law . . . .

. . . .

> C. During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.

"Injunctive relief is an equitable remedy, which is ordinarily only available when a party has no adequate legal remedy." *Constr. Diva, L.L.C. v. New Orleans Aviation Bd.*, 2016-0566, p. 5 (La. App. 4 Cir 12/14/16), 206 So.3d 1029, 1034. It constitutes "a harsh, drastic remedy that should only issue where the petitioner is threatened with irreparable harm and has no adequate remedy at law." *Id.*, 2016-0566, p. 6, 206 So.3d at 1034 (quoting *C. Napco, Inc. v. City of New Orleans*, 2006-0603, p. 6 (La. App. 4 Cir. 3/7/07), 955 So.2d 155, 160).

"A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo between the parties, pending trial on the main demand." *Ard*, 2019-0312, p. 14, ___So.3d at ___, 2019 WL 5432098, at *6 (citing *Desire Narcotics Rehab. Inc. v. State Dep't of Health & Hosps.*, 2007-0390, p. 4 (La. App. 4 Cir. 10/17/07), 970 So.2d 17, 20). Preliminary injunctions can be prohibitory or mandatory. *Id.*, 2019-0312, p. 14, ___So.3d at ___, 2019 WL 5432098, at *7. A mandatory injunction "orders the doing of something[,]" while "a prohibitory injunction seeks to restrain conduct." *Id.*, 2019-0312, pp. 14-15, ___ So.3d at ___, 2019 WL 5432098, at *7 (citing *Denta-Max v. Maxicare La., Inc.*, 1995-2128, p. 3 (La. App. 4 Cir. 3/14/96), 671 So.2d 995, 997; *Yokum*, 2012-0217, p. 9, 99 So.3d at 81).

The party moving for a preliminary injunction bears the burden of proof and must show that (1) the mover will suffer irreparable injury, loss, or damage if the motion is not granted; (2) the mover is entitled to the relief sought; and (3) the

mover will likely prevail on the merits of the case. *Mercadel v. New Orleans Jazz & Heritage Festival & Foundation, Inc.*, 2022-0242, p. 11 (La. App. 4 Cir. 4/20/22), ___ So.3d ___, ___, 2022 WL 1165505, at *5 (citing *ERG Enters., LLC v. Green Coast Enters., LLC*, 2019-1104, p. 10 (La. App. 4 Cir. 5/13/20), 299 So.3d 1194, 1201). "[T]he procedural requirements to satisfy 'the standard of proof required to meet the elements for a preliminary injunction differ[], contingent upon whether the preliminary injunction sought is a prohibitory injunction or a mandatory injunction.'" *Id.*, 2022-0242, p. 9, ___ So.3d at ___, 2022 WL 1165505, at *4 (quoting *Ard*, 2019-0312, p. 14, ___ So.3d at ___, 2019 WL 5432098, at 7). If the mover seeks a prohibitory preliminary injunction, the mover must make a *prima facie* showing; yet if the mover seeks a mandatory preliminary injunction, the mover must demonstrate the elements by a preponderance of the evidence at an evidentiary hearing. *Id.*, 2022-0242, pp. 9-10, ___ So.3d at ___, 2022 WL 1165506, at *4 (quoting *Ard*, 2019-0312, p. 15, ___ So.3d at ___, 2019 WL 5432098, at *7).

Regarding the first element, irreparable injury is "a loss sustained by an injured party which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard." *State ex rel. Dep't of Soc. Servs., Office of Family Support ex rel. Chesser v. Brunnette*, 2003-1965, p. 3 (La. App. 4 Cir. 6/2/04), 876 So.2d 244, 247 (quoting *Terrebonne Par. Police Jury v. Matherne*, 405 So.2d 314, 319 (La. 1981)). However, if the mover seeks a prohibitory preliminary injunction, as opposed to a mandatory one, then the mover may be entitled to injunctive relief without the requisite showing of irreparable injury. To avail oneself of this exception, the mover must make a *prima facie* showing that the conduct sought to be restrained is unconstitutional or

13

unlawful, i.e., it constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. *Jurisich v. Jenkins*, 1999-0076, p. 4 (La. 10/19/99), 749 So.2d 597, 599 (citing *S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm'n*, 555 So.2d 1370 (La. 1990)). *See also Phillips' Bar & Restaurant, Inc. v. City of New Orleans*, 2012-1306, p. 23 (La. App. 4 Cir. 4/24/13), 116 So.3d 92, 107; *Yokum*, 2012-0217, p. 8, 99 So.3d at 81. Thereafter, the trial court will grant the prohibitory preliminary injunction if the trial court determines the following requirements: (a) the conduct violates a prohibitory law (ordinance or statute) or the constitution; (b) the injunction seeks to restrain conduct, not order it (i.e., is prohibitory as opposed to mandatory); and (c) the mover has met the burden of making a *prima facie* showing that he is entitled to the relief sought. *See Yokum*, 2012-0217, pp. 8-9, 99 So.3d at 81. "Further, the jurisprudence makes clear that only *direct* violations of a prohibitory law may be enjoined without a showing of irreparable harm." *Two Canal Street Investors, Inc. v. New Orleans Bldg. Corp.*, 2015-0924, p. 13 (La. App. 4 Cir. 4/20/16), 193 So.3d 278, 287 (citing *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 2004-0211, p. 6 (La.3/18/04), 867 So.2d 651, 656). "Courts have found this prerequisite satisfied only when there has been a clear violation of express law, not cases of arguable violations." *Id*., 2015-0924, pp. 13-14, 193 So.3d at 287 (citing *Hobbs v. Gorman*, 595 So.2d 1264, 1266 (La. App. 4 Cir. 1992)).

*Analysis*

As the procedural requirements to satisfy the standard of proof required to meet the elements for a preliminary injunction differ depending upon whether the preliminary injunction sought is a prohibitory or mandatory one, we commence our analysis by determining whether the injunctive relief sought by Appellants was

prohibitory or mandatory. *Mercadel*, 2022-0242, p. 9, ___ So.3d at ___, 2022 WL 1165505, at *4 (quoting *Ard*, 2019-0312, p. 14, ___ So.3d at ___, 2019 WL 5432098, at 7). Appellants sought to enjoin future shareholder meetings for the alleged failure of the Meeting to comply with Louisiana business corporation law; and they sought to enjoin approval and enforcement of the Proposed Settlement Agreement. Because they sought to restrain conduct rather than order conduct, this was a request for a prohibitory injunction, not a mandatory one. *Ard*, 2019-0312, pp. 14-15, ___ So.3d ___, ___, 2019 WL 5432098, at *7. Having determined that this was a request for a prohibitory preliminary injunction, we next determine whether Appellants made a *prima facie* showing that (1) they would suffer irreparable injury, loss, or damage if the motion was not granted; (2) they were entitled to the relief sought; and (3) they will likely prevail on the merits of the case.

Beginning with the irreparable injury element, in their Motion for Injunctive Relief and in briefing to this Court, Appellants argue that the preliminary injunction should have been granted to prohibit future shareholder meetings and to enjoin approval or execution of the Proposed Settlement Agreement. They argue that the Proposed Settlement Agreement did not adequately compensate them or the Corporation for the damages arising out of the Corporation's lawsuit against the Parish and Hard Rock Construction. Further, the underlying lawsuit also sought an award of money damages. Thus, all known relief arising from Appellants' efforts to enjoin the execution of the Proposed Settlement Agreement is susceptible to quantification in money damages. Appellants have not identified an irreparable injury, i.e., a non-monetary or non-economic harm, which they will

15

suffer in the absence of injunctive relief. *Brunnette*, 2003-1965, p. 3, 876 So.2d at 247.

Rather, Appellants' combined assignments of error, contend that Appellants are exempt from the irreparable harm requirement because the conduct they sought to enjoin violated one or more prohibitory laws. In assignments of error numbers one through five, Appellants assert the violation of certain laws or formalities regarding the negotiation and approval of the Proposed Settlement Agreement. Specifically, in assignment of error number one, Appellants contend that the Meeting was improper because it contained no election of a meeting chairperson and Ms. Beck acted as corporate secretary. They assert that these actions violated La. R.S. 12:1-708[8] and La. R.S. 12:1-840(C),[9] respectively. Appellants assert in the second assignment of error that it was illegal for Ms. Beck to obtain proxies from the children of the decedent, Camille Randazzo Ruiz, without a copy of decedent's will, formal letters testamentary, or a judgment of possession placing the children into possession of the estate. Similarly, in the third assignment of error, Appellants argue that it was illegal for Ms. Beck to obtain proxies granted by the surviving spouse of the decedent, Manuel J. Randazzo, Sr., to her attorney without a copy of the decedent's will, formal letters testamentary, or a judgment of possession

---

[8] Louisiana Revised Statute 12:1-708(A) states that "[a]t each meeting of shareholders, a chair shall preside. The chair shall be appointed as provided in the bylaws or, in the absence of such provision, by the board." Appellants contend Ms. Beck was not directly appointed by the board; instead, they argue that she improperly installed herself as the chair based on the fact that she held the proxy of the Corporation's then-president, Lena Randazzo Torres.

[9] Louisiana Revised Statute R.S. 12:1-840(C) assigns to the secretary the "authority and responsibility for preparing the minutes of the directors' and shareholders' meetings. . . ." Appellants suggest that inasmuch as Ms. Beck was not the duly appointed Secretary of the Corporation, all acts she performed in that capacity were invalid.

16

placing the surviving spouse into possession of the succession. Appellants contend that the actions outlined in assignments of error numbers two and three constitute violations of La. R.S. 12:1-722(C).[10] In the fourth assignment of error, Appellants allege that it was illegal for Ms. Beck to accept documents and make them part of the meeting after the adjournment of the meeting. They cite this as a violation of La. R.S. 12:1-724.[11] Further, in the fifth assignment of error, Appellants contend that it was illegal for the qualified director of the corporation, Lena Randazzo Torres, to permit her son, Mr. Torres, to act as the attorney in negotiating the Proposed Settlement Agreement without having disclosed any conflicts of interest. Appellants assert that this was a violation of La. R.S. 12:1-143.[12] Based upon the

---

[10] Louisiana Revised Statute 12:1-722(C) provides, in part, that "[a]n appointment of a proxy is effective when a signed appointment form or an electronic transmission of the appointment is received by the inspector of election, the secretary, or other officer or agent of the corporation authorized to tabulate the votes." Appellants represent that Lorene A. Randazzo was the duly authorized secretary of the Corporation and because she never accepted for tabulation the proxies held by Ms. Beck or the representatives of the claimed heirs of Camille Ruiz or Manuel J. Randazzo, Sr., the proxy votes were ineffective.

[11] Louisiana Revised Statute 12:1-724(A) provides "[i]f the name signed on a vote, consent, waiver, or proxy appointment corresponds to the name of the shareholder, the corporation if acting in good faith is entitled to accept the vote, consent, waiver, or proxy appointment and give it effect as the act of the shareholder." Appellants contend that no documentation was presented during the pendency of the meeting to verify that Cheryl Randazzo was a named shareholder, and that it was thus illegal for Ms. Beck to supplement the record post-meeting with the judgment of possession to establish Cheryl Randazzo as a named shareholder. Further, Appellants argue that the proxies submitted on behalf of Camille Ruiz's children were also not submitted by a judicially authorized representative of a named shareholder. Accordingly, Appellants suggest that the acceptance of proxy votes by Ms. Beck on behalf of Cheryl Randazzo and the Ruiz children, whom Appellants characterize as "non-shareholders," was illegal.

[12] Louisiana Revised Statute 12:1-743 provides the following:

A. A "qualified director" is a director who meets the following criteria:

(1) At the time action is to be taken under R.S. 12:1-744, does not have either of the following conflicting interests:

(a) A material interest in the outcome of the proceeding.

(b) A material relationship with a person who has such an interest.

(2) At the time action is to be taken under R.S. 12:1-853 or 1-855, does not have a material relationship with a director described in either Subparagraph (a) or (b) of this Paragraph and is not either of the following:

(a) A party to the proceeding.

(b) A director as to whom a transaction is a director's conflicting interest transaction or who sought a disclaimer of the corporation's interest in a business opportunity under R.S. 12:1-870, which transaction or disclaimer is challenged in the proceeding.

(3) At the time action is to be taken under R.S. 12:1-862, a director who is neither of the following:

(a) A director as to whom the transaction is a director's conflicting interest transaction.

(b) A director who has a material relationship with another director as to whom the transaction is a director's conflicting interest transaction.

(4) At the time action is to be taken under R.S. 12: 1-870, would be a qualified director under Paragraph (A)(3) of this Section if the business opportunity were a director's conflicting interest transaction.

(5) At the time action is to be taken under R.S. 12:1-202(B)(6), a director who is neither of the following:

(a) A director to whom the limitation or elimination of the duty of an officer to offer potential business opportunities to the corporation would apply.

(b) A director who is a related person to another officer to whom the limitation or elimination would apply.

B. For purposes of this Section and R.S. 12:1-860:

(1) "Material interest" means an actual or potential benefit or detriment, other than one that would devolve on the corporations or the shareholders generally, that would reasonably be expected to

alleged violations in assignments of error numbers one through five, Appellants assert in assignment of error number six that the trial court committed manifest error by denying their request for injunctive relief because "the action sought to be enjoined is a violation of prohibitory law."

Upon review, we find that Appellees' opposition to the enumerated violations establish that if the violations were in fact violations of prohibitory laws, at minimum, the violations were arguable violations. *See Two Canal Street Investors, Inc.*, 2015-0924, p. 13, 193 So.3d at 287. Arguable violations of prohibitory laws are not sufficient to remove an applicant from the necessity of proving irreparable harm to obtain injunctive relief; instead, our jurisprudence requires that the conduct enjoined be a *direct* violation of a prohibitory law. *Id. See also Jurisich*, 1999-0076, p. 3, 749 So.2d at 599.

---

impair the objectivity of the director's judgment when participating in the action to be taken.

(2) "Material relationship" means a familial, financial, professional, employment or other relationship that would reasonably be expected to impair the objectivity of the director's judgment when participating in the action to be taken.

C. The presence of one or more of the following circumstances shall not automatically prevent a director from being a qualified director:

(1) Nomination or election of the director to the current board by any director who is not a qualified director with respect to the matter, or by any person that has a material relationship with that director, acting alone or participating with others.

(2) Service as a director of another corporation of which a director who is not a qualified director with respect to the matter, or any individual who has a material relationship with that director, is or was also a director.

(3) With respect to action to be taken under R.S. 12:1-744, status as a named defendant, as a director against whom action is demanded, or as a director who approved the conduct being challenged.

19

Regardless, this Court need not substantively review whether the statutes or succession formalities cited by Appellants hereinabove are prohibitory laws because a petitioner is entitled to injunctive relief without the showing of irreparable harm when the ***conduct*** sought to be enjoined is a direct violation of a prohibitory law. *See Jurisich*, 1999-0076, p. 4, 749 So.2d at 599. Appellants do not request a prohibitory injunction to enjoin Appellees from violating the cited statutes or a mandatory injunction to compel compliance with succession laws. Instead, they seek to enjoin future shareholder meetings that could remedy the alleged violations, and they oppose recognition of the judgments which purportedly legally designate Cheryl Randazzo and the Ruiz children as rightful heirs to Manuel J. Randazzo, Sr., and Camille Ruiz, respectively. Accordingly, this Court need only substantively review whether the ***conduct*** Appellants seek to enjoin is reprobated by law.

Here, Appellants identify the conduct they seek to enjoin as:

1. Restraining and enjoining said parties their agents and assigns from setting any more meetings of shareholders or directors during the pendency of these proceedings, and

2. Restraining and enjoining same from taking any action concerning the Hilan Double Lot, including but not limited to, any meetings or agreements with the Parish of St. Bernard or any of its representatives and Hard Rock Construction, L.L.C. concerning the Hilan Double Lot.

In *Hobbs,* 595 So.2d at 1266-67, this Court determined that the irreparable harm exception did not apply to an employee who sought to prevent the Sewerage & Water Board (hereinafter "S&WB") from prohibiting the employee from using a S&WB vehicle to commute. The employee alleged that his rights to equal protection under the Louisiana and United States constitutions had been violated when the S&WB took away his assigned vehicle. *Id.* The Court concluded that the

S&WB's prohibition did not violate any express law and appeared to be a routine business practice. *Id.*

Likewise, in the case *sub judice,* Appellants desire to enjoin shareholder meetings merely to prohibit a vote on the Proposed Settlement Agreement of which they disapprove. This conduct, namely prohibiting Appellees from having shareholder meetings and/or having meetings or entering agreements with the Parish and Hard Rock Construction regarding the Property, does not violate prohibitory laws. On its face, resolution of litigation through negotiating or entering a settlement agreement is not conduct reprobated by law. Appellants do not contend or show that the Proposed Settlement Agreement was for a purpose prohibited by law.[13] Likewise, conducting a shareholder meeting to vote on a proposed settlement agreement is not illegal. Appellants do not meet the first requirement to be relieved of the irreparable harm factor, i.e., that the requested injunction will enjoin conduct in clear violation of a prohibitory law. Thus, we conclude that the trial court did not abuse its discretion in denying Appellants' Motion for Injunctive Relief because Appellants have not demonstrated that they are entitled to such relief. Further, having reached that conclusion, we pretermit discussion of the remaining requirements for obtaining injunctive relief without proving irreparable harm: because all three requirements must be met and Appellants failed to prove one of the requirements, we need not consider the other two requirements.

---

[13] Louisiana Civil Code Article 1971 provides that "[p]arties are free to contract for any object that is lawful, possible, and determined or determinable."

21

**DECREE**

For the foregoing reasons, the trial court's May 10, 2021 judgment, which denied Appellants' Motion for Injunctive Relief, is affirmed.

**AFFIRMED**